William B. TRAVIS et al.

v.

FAIRMOUNT FOODS CO., Inc., et al.

Civ. A. No. 72–178.

United States District Court,
E. D. Pennsylvania.

Aug. 10, 1972.

Werner H. Von Rosenstiel, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Peter Hearn, Gerald A. Gleeson, Jr., William H. Lowery, H. Kenneth Tull, Richard M. Shusterman, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

The complaint in this case avers that this is a class action by four individuals on behalf of themselves and for milk

consumers in the geographical area of Pennsylvania designated by the Pennsylvania Marketing Board as Milk Marketing Area #1.[1] The action is brought under § 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, for threefold damages against six (6) defendants that are engaged in the selling of milk and milk products. All but one of them also sell these products at retail. Their business involves the collection, processing, distribution and sale of those products in a number of states, including Pennsylvania, New Jersey, Delaware and Maryland.

The gist of the amended complaint is that the defendants, since January 3, 1972, have conspired to increase the sale price of their products, particularly liquid milk, "either by direct sales to plaintiffs at increased prices on milk sales routes, and company controlled milk stores," or indirectly by increasing the wholesale price of liquid milk to unnamed retailers, as the result of which the retailers have been required to absorb the increased cost or to pass it along to the consumer in the form of increased prices of milk or of other food products.

The matter is before us on defendants' motion to dismiss the amended complaint pursuant to Rule 12(b) (6), Federal Rules of Civil Procedure, on the grounds that (1) plaintiffs have no standing to sue in this action regarding indirect purchases from defendants, and (2) it fails to state a claim upon which relief can be granted with regard to the alleged direct purchases.

■ Regarding their first ground the defendants, citing a number of cases, point out that only a direct purchaser from an alleged price fixing conspiracy in a chain of economic activity such as is described in the amended complaint in this case can sustain a claim for treble damages against the alleged conspirators unless his purchases are made pursuant to a pre-existing cost-plus contract or analogous fixed mark-up type of arrangements, which are not claimed to exist here. Some of the cited cases are Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 50 F.R.D. 13 (E.D.Pa., 1970), aff'd sub nom. Mangano v. American Radiator and Standard Sanitary Corporation, 438 F.2d 1187 (C.A. 3, 1971); United Egg Producers v. Bauer International Corp., 312 F.Supp. 319, 321 (S.D.N.Y., 1970); City and County of Denver v. American Oil Co., 53 F.R.D. 620, 631, 637 (D.Colo., 1971). During the argument on the motion to dismiss, plaintiffs, faced with the array of authority cited by defendants, conceded that the law precluded recovery of damages under the Clayton Act on their claim involving indirect sales from retail outlets not owned or controlled by defendants.

■ As support for their second ground, defendants assert that the amended complaint pleads conclusions in the statutory language without setting forth any allegations of fact to support them. In the case of Makan Amusement Corp. v. Trenton-New Brunswick Theatres Co., 3 F.R.D. 429 (D.C.N.J., 1944), an action brought under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 4 of the Clayton Act, 15 U.S.C. § 15, it was held that the claim presented by plaintiff was sufficiently set forth in such a manner as to enable each of the defendants to prepare its responsive pleading in the face of the objections that it did not inform each of the defendants of the particular acts it committed, when and where such acts took place, and the means and methods used to accomplish the acts charged. In denying the motion to dismiss the complaint as amended, Senior Circuit Judge Foreman, then a United States District

1. This Marketing Area covers substantially all of Bucks, Chester, Delaware, Montgomery and Philadelphia Counties. According to the United States Bureau of Census report for 1970, this area has a total population of approximately 3,600,000 people.

Court Judge, reminded us that in most instances a conspiracy is proven from circumstantial evidence, and that "the usual facts are not at the disposal of the plaintiff for conspiracies and combinations are not apt to become common knowledge, making it extremely difficult for persons outside of the conspiracy or combination to obtain accurate details concerning it." [2] *Ibid.* at 431. We think the allegations of conspiracy in the complaint before us are sufficient to enable each of the six (6) defendants to prepare a responsive pleading.

■■ In the alternative the defendants argue that the amended complaint does not aver facts indicating how they implemented their conspiracy to increase the price of direct sales. Paragraph 7 of the amended complaint avers that defendants conspired to increase the sale price "to the detriment and damage of the . . . property of plaintiffs, either by sales to plaintiffs at increased prices on milk sales routes, and through company controlled milk stores . . ." And paragraph 1 states in part that "by reason of the unlawful conspiracy of the defendants and the illegal acts of the defendants in implementation of that conspiracy, as hereinafter set forth, suffered or may hereafter suffer damages from acts of defendants." Regarding the approximate amount of the damages plaintiff and the class they claim to represent have and will sustain, paragraph 9 sets forth that plaintiffs "believe that it is well in excess of $10,000.00 for each day the conspiracy remains effective." True, the amended complaint does not expressly say that the defendants increased the retail price of milk in implementation of their conspiracy. Giving that pleading a liberal reading as a whole, which we are required to do,[3] the fair import of the averments is that defendants conspired to increase the retail price of milk, that pursuant to that conspiracy they did increase the price and that plaintiffs and the class they claim to represent purchased the milk at the increased price to their damage.

Defendants' motion to dismiss the claim for damages from indirect sales to plaintiffs and the class they claim to represent from retail outlets not owned or controlled by defendants will be allowed; in other respects it will be denied.

---

2. A conspiracy "may be inferred from the evidence of more than a coincidental sequence of events." National Gas Appliance Corp. v. Manitowoc Co., 311 F.2d 896, 900 (C.A. 7, 1963).

3. Pleadings in antitrust actions are to be given that liberal reading called for by Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. See Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5th Cir., 421 F.2d 1313, 1318, reh. den. 5th Cir., 427 F.2d 710, cert. den. 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215; South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414, 420 (C.A. 4, 1966), cert. den. 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215.