See also D.C., 58 F.R.D. 485.

**DONSON STORES, INC., et al., Plaintiffs,**

v.

**AMERICAN BAKERIES COM-
PANY et al., Defendants.**

No. 72 Civ. 3991.

United States District Court,
S. D. New York.

Feb. 20, 1973.

**482**

Bader & Bader, New York City, for intervenors.

Milberg & Weiss, New York City, and Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff Donson Stores, Inc.

Silverman & Harnes, New York City, for plaintiffs Martin Perlov, Sheldon Geller and Larry Margolin.

Simpson, Thacher & Bartlett, New York City, for defendant Ward Foods, Inc.

Lovejoy, Wasson, Lundgren & Ashton, New York City, for defendant General Host Corporation.

Wormser, Kiely, Allessandroni, Mahoney & McCann, New York City, for defendant ITT Continental Baking Co.

Royall, Koegel & Wells, New York City, for defendant American Bakeries Co.

BAUMAN, District Judge.

Plaintiffs, operators of retail grocery stores, instituted this treble damage class action against the defendant baking companies to recover three times the overcharges resulting from an alleged conspiracy to fix the price of bread in the New York City Metropolitan area during the period July, 1966 to June, 1969.

Presently before the Court is a motion by three consumers for leave to intervene as plaintiffs on behalf of a class estimated by movants' counsel at 20 million people. All of the parties oppose the motion. The proposed intervenors invoke Rule 24 of the Federal Rules of Civil Procedure.[1] They contend they were the only parties injured by the illegal overcharges because the plaintiff retailers passed the overcharges on to them. They further ask the Court to take "judicial notice of the fact that bread is sold by retail grocers under a 'cost plus' markup provision" and to hold that they alone are entitled to recover.

The parties opposing, on the other hand, claim that the consumers, as "indirect purchasers", have no standing to

---

1. The movants seek to intervene pursuant to Rule 24(a) or, in the alternative, pursuant to Rule 24(b).

Rule 24(a) provides in pertinent part that:

"Upon timely application anyone shall be permitted to intervene in an action:

. . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Rule 24(b) provides in pertinent part that:

"Upon timely application anyone may be permitted to intervene in an action:

. . .

(2) when an applicant's claim or defense have a question of law or fact in common."

assert a claim under section 4 of the Clayton Act.[2] They contend that any injury sustained by the proposed intervenors and the class of consumers they claim to represent is, as a matter of law, too remote to support a claim upon which relief can be granted.

■ The rule permitting intervention presupposes that the applicant has a right to maintain a claim for the relief he seeks. Solien v. Miscellaneous Drivers & Helpers Union, 440 F.2d 124, 132 (8th Cir. 1971), cert. denied, 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680, reh. denied, 404 U.S. 960, 92 S.Ct. 305, 30 L. Ed.2d 277 (1971); Reynolds v. Marlene Industries Corp., 250 F.Supp. 722 (S.D. N.Y.1966). The threshold question, therefore, is whether the proposed intervenors have standing to maintain an action against the defendants.

The proper starting place to evaluate the competing claims of the parties is the recent Supreme Court case of Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). There a lessee of shoe machinery sued to recover treble damages from its lessor claiming that if the defendant had sold it the machinery instead of unlawfully insisting upon a leasing agreement the cost of utilizing the machinery would have been lower. The defendant denied liability asserting that the plaintiff had not been injured because it had "passed-on" the alleged overcharges to its customers by charging them higher prices for its shoes. The Supreme Court rejected this contention and held that, absent special circumstances, the Clayton Act permits a pur-

chaser to recover unlawfully increased costs whether or not he passes all or part of them on to succeeding purchasers. The Court found that:

"Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued." 392 U.S. at 493, 88 S.Ct. at 2231.

It therefore concluded that the task of establishing the pass-on "would normally prove insurmountable" and declined to permit a factual inquiry to determine what the resale price would have been without the initial overcharge.

It did not, however, reject the passing-on defense completely. It "recognize[d] that there might be situations . . . where the [policy] considerations requiring that the passing-on defense not be permitted in this case would not be present." 392 U.S. at 494, 88 S.Ct. at 2232. As an example, the opinion suggests a situation in which a purchaser passes on under a preexisting cost-plus contract. In such a situation the purchaser obviously has not been damaged by the illegal overcharge since his profit is fixed by the terms of the contract and not by his initial cost.

In coming to this result the case provides a certain amount of useful fallout:

1) The Court approved the general principle that the victim of an overcharge is damaged to the extent of the overcharge.

---

2. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in

which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2) The Court recognized that, in a typical pass-on situation, the difficulty inherent in proving the effect of the overcharge on profits would make it impossible, as a practical matter, to divest the defendant of the overcharge.

3) Implicitly, the Court concluded that given a choice between allocating a windfall to plaintiffs who have not violated the antitrust laws or to those who have, justice would require that it should be received by the former. See 392 U. S. at p. 494, 88 S.Ct. 2224. Cf. Ohio Valley Electric Corp. v. General Electric Co., 244 F.Supp. 914 (S.D.N.Y.1965).

▪ Although *Hanover* dealt with the claim of an initial purchaser, its rationale forecloses claims by subsequent buyers in the distribution chain. See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 50 F.R.D. 13, 30 (E.D.Pa. 1970), aff'd sub nom. Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187 (3d Cir. 1971); Malina, Fluid Class Recovery as a Consumer Remedy in Antitrust Cases, 47 N.Y.U.L.Rev. 477, 486 (1972). Fairness dictates that if a price fixer overcharges his customer one dollar, his damage exposure should be limited to that dollar trebled. See Hawaii v. Standard Oil Co., 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); Handler, Through the Antitrust Looking Glass—Twenty-First Annual Antitrust Review, 57 Calif.L.Rev. 182, 209 (1969). It therefore follows that if an initial purchaser may recover an illegal overcharge regardless of whether he passes it on to succeeding purchasers, they must be denied standing to sue in order to prevent the possibility of multiple liability.[3] See Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 534, 38 S.Ct. 186, 62 L.Ed. 451 (1918); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra, 50 F.R.D. at 30. Thus, *Hanover* stands for the proposition that only the initial purchaser from a price-fixing manufacturer may recover the overcharge unless he has made sales to subsequent purchasers pursuant to cost-plus contracts, in which event the original purchaser becomes a mere conduit for passing the cause of action to his customers.

This analysis has been at the core of several post *Hanover* cases. Thus, in Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra, the plaintiffs were home owners who sought treble damages from certain plumbing fixture manufacturers. They contended that the manufacturers illegally overcharged intermediate parties for the plumbing fixtures and that this overcharge came to be included in the cost of their homes. Relying upon the Supreme Court's rejection of the "pass on" defense in *Hanover,* the Court denied the plaintiffs' standing to sue because of "insurmountable difficulties of proof." It noted that the "plaintiffs did not make their purchases pursuant to a preexisting cost-plus contract or analogous fixed markup type of arrangement" and concluded that the same difficulties of proof that bar an antitrust defendant from raising the "pass on" defense against his customer operate to deny a consumer plaintiff standing.

Similarly, in City of Detroit v. American Bakeries, Inc., No. 33046 and consolidated actions (E.D.Mich.1971), the Court dismissed an action on behalf of consumers of bread on the ground that, as remote purchasers, they lacked stand-

---

3. Of course, if the first purchaser buys pursuant to a preexisting cost-plus contract or an analogous fixed markup arrangement, the succeeding purchaser must have standing to sue since the illegal overcharge is completely passed on to him and he is the only one damaged by it. See Malina, Fluid Class Recovery as a Consumer Remedy in Antitrust Cases, 47 N.Y.U.L.Rev. 477, 487.

ing to sue. The Court held "as a matter of law the ultimate consumer may not maintain an action where the direct injury, if any, falls upon the primary buyer in the chain of distribution."

The proposed intervenors argue that these decisions misread *Hanover* and suggest that the rejection of the "pass-on" defense does not demand a corresponding rejection of the rights of remote purchasers. They further contend that the Hanover rule was never intended to prevent the award of damages to those who ultimately paid higher prices as a result of an antitrust violation. They rely on State of West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971), a case in which the Second Circuit approved a settlement which recognized the right of consumers to recover damages resulting from an alleged conspiracy to fix the price of antibiotics. There, the consumers alleged that the unlawful activity of the drug manufacturers had resulted in higher prices to wholesalers who in turn charged more to retailers who then passed the overcharge on to them. I find, however, that the intervenors' reliance on that case is misplaced. The sole question presented was whether the District Court had abused its discretion in approving a settlement proposed by most of the wholesalers, retailers, individual customers and defendants. The Court expressly recognized that it was not called upon to decide the question raised here, specifically stating that it "should not reach any dispositive conclusions on [this] admittedly unsettled legal [issue] . . ." 440 F.2d at 1086.

No Court actually faced with the problem since *Hanover* has held that the ultimate consumers, rather than those more directly injured, are the proper parties to avail themselves of the provisions of the Sherman Act. Instead, the Courts have uniformly held precisely the contrary. See Balmac, Inc. v. American

Metal Products Corp., 1972 Trade Cases ¶ 74,235 (N.D.Cal.1972); City of Akron v. Laub Baking Co., 1972 Trade Cases ¶ 73,930 (N.D.Ohio 1972); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra; City of Detroit v. American Bakeries Company, supra.

 The implications of *Hanover* for the case at bar are therefore clear. In the absence of an allegation that the alleged price fixing occurred at the point of their purchase, i. e., that the manufacturers were guilty of unlawful vertical price fixing at the retail level, the proposed intervenors have no legally cognizable claim. The bare allegations in the proposed complaint that the retailers passed on the overcharge to consumers do not state a claim upon which relief can be granted. It follows that the proposed intervenors have no standing to intervene in this action.

Accordingly, the motion to intervene is denied.

It is so ordered.