**CARNIVALE BAG CO., INC., et al., Plaintiffs,**

v.

**SLIDE–RITE MFG. CORP., et al., Defendants.**

**No. 74 Civ. 5574.**

United States District Court, S. D. New York.

June 10, 1975.

---

Ira Jay Sands, New York City, for plaintiffs.

Guggenheimer & Untermyer, New York City, by Harold Baer, Jr., Howard B. Weinreich, New York City, for defendant Slide-Rite Mfg. Corp.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Acme Associates Inc.

Hofheimer Gartlir Gottlieb & Gross, New York City, for defendant Pilling Chain Co., Inc.

ROBERT L. CARTER, District Judge.

## OPINION

Plaintiffs bring this action pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, seeking damages and injunctive relief for alleged violations of § 1 of the Sherman Act, 15 U.S.C. § 1. Defendants move to dismiss under Rule 12(b)(6), F.R.Civ.P., on the ground that plaintiffs lack standing to maintain this action. The motion is denied.

### The Complaint

The complaint alleges that the four plaintiff corporations are manufacturers of clothing, plastic bags and carryalls, and that all plaintiffs have "purchased zippers comprised of parts supplied by defendants for use in such products."

(Complaint ¶ 1–3). The action is brought on behalf of the class of manufacturers of these products "in which zippers were used, during the period of January 1, 1966 to date." (Complaint ¶ 6). It is further alleged that during the relevant period, each of the three defendants "has been engaged in the manufacture and sale of sliders * * * to semi-integrated zipper manufacturers and zipper assemblers * * *." (Complaint ¶ 12–14). A "slider" is "a component of a zipper attached to and which slides on a zipper chain. Movement of the slider along the chain opens or closes the zipper." (Complaint ¶ 16). It is alleged that the defendant slider manufacturers violated § 1 of the Sherman Act by entering into a combination and conspiracy "to raise, fix, stabilize and maintain the price of sliders," and to "establish uniform prices for such sliders * * *." (Complaint ¶ 23). Plaintiffs and their class have allegedly sustained injury as a result of this combination in that they "have been required to overpay for the zippers they buy from semi-integrated manufacturers, zipper assemblers and integrated manufacturers and such excessive cost has increased their cost of production and reduced the profits which they would otherwise enjoy." More generally, it is alleged that plaintiffs have been damaged by the increased price of sliders; by the restraint of competition in the sale of sliders; and by the loss of "the opportunity for them to obtain sliders at competitive prices * * *." (Complaint ¶ 24).

*Discussion*

■ A motion to dismiss should not be granted unless it is established "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284, 287 (2d Cir. 1971). The allegations of the complaint are assumed to be true for purposes of the motion, *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir. 1968), and are considered in the light most favorable to the plaintiff. *Sinva v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 253 F.Supp. 359, 367 (S.D.N.Y. 1966).

In support of their motions, defendants rely primarily on *Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 481 (S.D.N.Y.1973) (Bauman, J.), and like cases where the courts have held that only the *immediate* purchaser from an antitrust defendant has standing, and that a purchaser from the defendant's customer or a more remote purchaser may not maintain an action.[1] *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.,* 50 F.R.D. 13 (E.D.Pa.1970), *aff'd sub nom Mangano v. American Radiator and Standard Sanitary Corp.,* 438 F.2d 1187 (3d Cir. 1971); *United Egg Producers v. Bauer International Corp.,* 312 F. Supp. 319 (S.D.N.Y.1970); *Balmac, Inc. v. American Metal Products Corp.,* Trade Cas. ¶ 74,235 (N.D.Cal.1972); *Travis v. Fairmount Foods,* 346 F.Supp. 679 (E.D.Pa.1972); *see also In re Antibiotic Antitrust Actions,* 333 F.Supp. 310 (S.D.N.Y.1971). In *Donson Stores, supra,* Judge Bauman stated that his holding denying standing to remote purchasers was a logical and necessary deduction from the Supreme Court's rejection of the "passing-on" defense in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). In *Hanover Shoe,* where a "purchaser"[2] from de-

---

1. Donson Stores was an action by retail bakers against bread manufacturers which alleged a price-fixing conspiracy. The question before the court was whether to allow intervention by a putative class of approximately 20 million ultimate consumers of bread. The court denied the motion to intervene.

2. Plaintiff Hanover, a lessee of shoe machines from United, claimed that price overcharges resulted in part from United's policy

fendant United sued to recover for price overcharges which allegedly resulted from United's monopolization, United sought to raise the defense that plaintiff Hanover, its immediate customer, had sustained no damage since it had "passed on" the overcharge to subsequent purchasers. The Supreme Court held that the trial court properly rejected this defense for two related reasons: (1) the Court foresaw a great increase in the complexity of antitrust litigation if the defense were allowed; and (2) the deterrent effect of private antitrust enforcement would be weakened since most defendants would raise this complicated defense as a delaying tactic if permitted to do so.[3] 392 U.S. at 493, 88 S. Ct. at 2231.

In *Donson Stores, supra,* Judge Bauman reasoned that since the immediate purchaser is entitled to recover the entire overcharge under *Hanover Shoe,* whether or not the overcharge is passed on, to allow subsequent purchasers to sue the defendant would be to expose the defendant to multiple liability:

"Fairness dictates that if a price fixer overcharges his customer one dollar, his damage exposure should be limited to that dollar trebled. · [citations omitted] It therefore follows that if an initial purchaser may recover an illegal overcharge regardless ·of whether he passes it on to succeeding purchasers, they must be denied standing to sue in order to prevent the possibility

footnote omitted]" 58 F.R.D. at 484. of multiple liability. [citations and

In the present case, the complaint does not allege that plaintiffs purchased sliders directly from defendants.[4] It is alleged only that plaintiffs purchased completed *zippers* from integrated and semi-integrated zipper manufacturers and zipper assemblers,[5] who, it may be inferred, purchased sliders from the defendants. Defendants contend that under *Donson Stores,* only the integrated and semi-integrated manufacturers and assemblers—not the plaintiffs—have standing as immediate purchasers of sliders from defendants.

I am convinced that the corollary drawn from *Hanover Shoe* in *Donson Stores* is unwarranted, and I decline to follow the reasoning of *Donson Stores.* As I read *Hanover Shoe,* the Supreme Court's primary reason for precluding defendants from raising the passing-on defense was that such a defense would unduly hinder private enforcement of the antitrust laws. It would disserve the policies stated by the Court to permit these defendants to use the Court's very prohibition of the use of the passing-on defense as a complete defense against an entire class of plaintiffs. In *In re Master Key Antitrust Litigation,* 1973–2 Trade Cas. ¶ 74,680 at 94,978–79 (D.Conn.1973), Judge Blumenfeld held that *Hanover Shoe* should not be construed to preclude suits by subsequent purchasers against alleged price fixers. *Master Key* is a sound analysis of *Hano-*

---

of leasing only and refusing to sell its machines. United's policy had been found to be an instrument of monopolization.

3. The Court did, however, create an exception to its ruling, holding that the passing-on defense could be raised when defendant established that customers of the plaintiff had purchased pursuant to a cost-plus contract, and that the plaintiff had thereby clearly passed on the cost overcharge. That circumstance is not present here.

4. In paragraph 24(b), it is alleged that "plaintiffs and the classes have been deprived * * * of the opportunity for

them to obtain sliders at competitive prices * * *." The memoranda make clear, however, that this is not the gravamen of the complaint, and that plaintiffs allegedly sustained their principal damages in the purchase of completed zippers.

5. In their supplemental memorandum, plaintiffs have informed the court that plaintiffs and class members purchased some zippers from jobbers. As to these purchases, plaintiffs are still one step further removed from defendants in the distribution chain. As the subsequent discussion makes clear, this is immaterial at this stage of the litigation.

*ver Shoe,* and I follow it here. Judge Blumenfeld said:

> "Thus, defendants' invocation of *Hanover,* which *rejected* a proposed pass-on defense in order to ensure that those who violated the antitrust laws did not escape liability through a multiplication of legal complexity, strikes a discordant note. [citation omitted] The attempt to transform a rejection of a defense because it unduly hampers antitrust enforcement into a reason for a complete refusal to entertain the claims of a certain class of plaintiffs seems an ingenious attempt to turn the decision and its underlying rationale on its head."

The Supreme Court in *Hanover Shoe* clearly did not expect that its holding would be interpreted to preclude actions by subsequent purchasers. One of the Court's reasons for rejecting the passing-on defense was concern that the defense would be raised to bar suits by all subsequent purchasers except the consuming public:

> "In addition, if buyers are subjected to the passing-on defense, those who buy from them would also have to meet the challenge that they passed on the higher price to *their* customers. These ultimate customers, in today's case the buyers of single pairs of shoes, would have only a tiny stake in a lawsuit and little interest in attempting a class action. In consequence, those who violate the antitrust laws by price fixing or monopolizing would retain the fruits of their illegality because no one was available

who would bring suit against them. Treble-damage actions, the importance of which the Court has many times emphasized, would be substantially reduced in effectiveness." 392 U.S. at 494, 88 S.Ct. at 2232.

Thus the Court clearly contemplated suits by subsequent purchasers and stated that they were essential to the enforcement of the antitrust laws.

■ In effect, defendants claim that plaintiffs cannot prove their damages. However, whether plaintiffs can or cannot prove their case at trial is not dispositive of a motion to dismiss. *See In re Master Key Antitrust Litigation, supra,* 1973–2 Trade Cas. ¶ 74,680 at 94,979. The complaint states precisely what plaintiffs intend to prove in respect of damages, to wit, that cost overcharges were *passed on* to them. (Complaint ¶ 24(d)). The Supreme Court in *Hanover Shoe* did not (and could not) decree that price overcharges are not *in fact* ever passed on. The Court said only that antitrust *defendants* could not raise passing on as a defense, not that subsequent purchasers, as *plaintiffs,* could not prove passing on as part of their case. There is a significant difference between the two, and plaintiffs must be allowed to prove that cost overcharges were passed on to them.[6]

■ The only legitimate interest these defendants have in raising the point that they would be precluded from raising the passing-on defense in a future action by an immediate purchaser is their interest in avoiding duplicative

**6.** The case of United Egg Producers v. Bauer International Corp., *supra,* cited by defendants, may be distinguishable on this point. There the court dismissed a class action complaint on behalf of all consumers of eggs in America on several alternative grounds. On the standing point, the court said:
> "Ultimate consumers are not within the economic class with standing to sue in the circumstances shown here, where the direct injury, if any, falls on the primary buyer in the chain of distribution and cannot be passed on to the ultimate consumer. (footnote omitted)" 312 F.Supp. at 321.
It is impossible to tell from the court's cryptic opinion whether there was a stipulation that overcharges could not be passed on or whether the court assumed that they could not be passed on. If either is the case, United Egg is distinguishable. If the court reads Hanover Shoe as precluding a plaintiff from showing passing on, I disagree, as stated in the text.

liability. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).[7] In this regard, defendants are fearful that plaintiff *zipper* purchasers will recover all or part of the alleged overcharge in this action, and that *slider* purchasers in some future action will be able to recover the entire overcharge again since defendants will be precluded by *Hanover Shoe* from raising the defense that all or part of the overcharge was passed on to the present plaintiffs. However, in *Boshes v. General Motors Corp.*, 59 F.R.D. 589 (N.D.Ill.1973), a decision on which Judge Blumenfeld relied in *Master Key,* the court enumerated several procedural devices which make defendants' fears largely illusory. First, the four-year statute of limitations, 15 U.S.C. § 15b, may limit the extent of defendants' liability to some slider purchasers and bar the claims of others altogether. Of perhaps greater importance, there exist various transfer and consolidation procedures to allow consolidation for trial of all suits growing out of the same claims even if they are initially brought in different districts. *See* 28 U.S.C. § 1404(a). The trial court can then apportion damages among the various plaintiffs or classes of plaintiffs and ensure against duplicative recovery. Finally, in order to foreclose the possibility of subsequent suits, defendants may interplead immediate purchasers and other potential plaintiffs under 28 U.S.C. § 1335.[8] *Id.* at 596.

In summary, if defendants utilize available protective procedures, the problem becomes one of apportioning damages among classes of plaintiffs. Denial of standing to one class of plaintiffs is not a proper way of dealing with the problem.

## II.

■ Defendants also contend that plaintiffs lack standing because they are not "targets" or are outside the "target area" of defendants' alleged antitrust violations.[9] In *Calderone Enter. Corp. v. United Artists Theatre Circuit*, 454 F.2d 1292, 1296 n. 2 (2d Cir. 1971), the Court of Appeals stated that only a "target" of an antitrust violation has standing to bring a private action. A target was defined as a "person or business against which competitive aim is taken," or "an object of an antitrust conspiracy."[10]

Finding the "rifle range metaphor" difficult to apply, Judge Gurfein in *International Railways of Central America v. United Brands Co.*, 358 F.Supp. 1363 (S.D.N.Y.1973), examined the underlying rationale of *Calderone*:

"The policy rationale recently expressed is that the damage to one who

7. Immediate purchasers have not appeared as plaintiffs in this action, and there is nothing in the record to suggest that such immediate purchasers contemplate future litigation against defendants.

8. There must be some identifiable fund or "stake" for § 1335 to be applicable.

Both Master Key and Boshes also state that if it were adjudicated in an action by a subsequent purchaser that the immediate purchaser had passed on a price overcharge, this would be collateral estoppel in a later action by the immediate purchaser. I disagree. Since, by hypothesis, the immediate purchaser would not have been a party to the first litigation, facts adjudicated in that action could not be pleaded as collateral estoppel against the immediate purchaser in a subsequent action. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

9. Defendants contend, perhaps correctly, that the *Donson Stores* rule is simply one application of the target-area concept.

10. In Calderone, *supra*, the court denied standing to a non-operating theater lessor who alleged injury by reason of a restrictive agreement among motion picture exhibitors. The concept has also been applied to preclude actions by franchisors, Billy Baxter, Inc. v. Coca Cola Co., 431 F.2d 183 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971), and patent licensors, S.C.M. Corp. v. Radio Corporation of America, 407 F.2d 166 (2d Cir. 1966), *cert. denied*, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969).

is not a target is usually much more speculative and difficult to prove, and that opening the flood-gates may result in 'overkill' [citation omitted]. * * * " 358 F.Supp. at 1370.

I am not prepared to hold on the present motion to dismiss that the damages sustained by a subsequent purchaser one or two stages removed from an alleged overcharge are so "speculative and difficult to prove" as to require dismissal of the complaints of all such purchasers. In addition, any danger of "overkill", which in this context may mean duplicative liability, may be mitigated by the procedural devices mentioned above.

In applying the target-area concept, it is well to recall that it was developed primarily in cases involving exclusionary practices directed against competitors, not price fixing in violation of § 1. This may account for the rifle range terminology in which defendants are described as "taking aim" at certain plaintiffs who are characterized as "targets." Thus it was in the context of an attempt to deprive the defendant's competitors of a principal source of supply and thus exclude them from the market that the court in *GAF Corp. v. Circle Floor Co., Inc.*, 463 F.2d 752, 758–59 (2d Cir. 1972), *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973), stated that a plaintiff was within the target area only if the complaint alleged that the plaintiff was "harmed by the anticompetitive effects" of the violation and sustained injury to its "competitive position." [11]

The object of a price-fixing agreement such as the one alleged here is not to *exclude* competitors. Rather, the object is to raise prices *for the benefit* of all ostensible competitors who participate in the agreement, and to inflict the overcharge on immediate purchasers and on their customers if the overcharge is passed on. Thus the "objects" of a price-fixing conspiracy, to use the language of *Calderone,* are immediate and subsequent purchasers, not the defendants' competitors.

To apply the requirement of injury to "competitive position" in a price-fixing conspiracy case would be plainly impracticable. This is particularly so here where it is alleged that defendants hold 90% of the market for sliders. In a case such as this, virtually all of the purchasers at each level in the manufacturing and distribution process are affected equally by the overcharges. Thus no one purchaser at a particular level sustains injury to its position *relative* to its competitors on the same level. If the *GAF Corp.* rule were applied in a price-fixing case such as this, not even an immediate purchaser would have standing if all such immediate purchasers were equally harmed. Ostensible competitors who were part of the conspiracy neither could nor would sue. Thus it appears that no one would have standing to bring a private action under § 1. I do not believe that the court in *GAF Corp.* intended that result. To satisfy the requirements of *GAF Corp.,* it should be sufficient to allege that plaintiffs were "harmed by the anticompetitive effects" of the price-fixing agreement. 463 F.2d at 759. In addition, plaintiffs must show that their damages were proximately caused by the "anticompetitive effects." *Billy Baxter, Inc. v. Coca Cola Co., supra,* 431 F.2d at 187.[12] Construing paragraph 24 of the complaint most favorably to the plaintiffs, the allegations therein clearly satisfy these requirements. Beyond these criteria and the requirement that the

---

11. In International Railways, *supra*, 358 F. Supp. at 1371, Judge Gurfein expressed the view that the plaintiff in GAF Corp., *supra*, "simply was not injured by any antitrust violation, rather than that its injury was incidental, indirect, remote, or outside the target area. (footnote omitted)"

12. The conclusion in S.C.M. Corp., *supra*, although phrased in "target area" terms, was that plaintiffs had not shown that the alleged violations were the proximate cause of the injuries. 407 F.2d at 171.

damages not be too "speculative and difficult to prove," the target-area concept, as applied in § 1 cases, may include a more general requirement that the harm to plaintiffs not be "incidental." *S.C.M. Corp. v. Radio Corporation of America, supra,* 407 F.2d at 169; *Productive Inventions, Inc. v. Trico Products Corp.,* 224 F.2d 678, 679 (2d Cir. 1955), *cert. denied,* 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); *see International Railways of Central America v. United Brands Co., supra,* 358 F.Supp. at 1370. Like the other elements of the "target-area" requirement, this issue must be decided on the facts of each case. *Productive Inventions, supra,* 224 F.2d at 680. On a motion to dismiss, it cannot be said that the injury sustained by a purchaser one or two stages from an illegal overcharge is an "incidental" effect of a price-fixing conspiracy.

Accordingly, plaintiffs have standing to maintain this action, and defendants' motions to dismiss are denied.

So ordered.