Kathleen R. REITER, Individually and as representative of the class of all personal users of hearing aids located in the United States, Plaintiffs,

v.

SONOTONE CORPORATION, a New York Corporation; Beltone Electronics Corporation, an Illinois Corporation; Dahlberg Electronics, Inc., a Minnesota Corporation; Textron Incorporated, a Delaware Corporation, and Radioear Corporation, a Delaware Corporation, Defendants.

No. 4–75–Civ. 206.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 27, 1980.

John E. Thomas, St. Paul, Minn., for plaintiffs.

James H. Levy, St. Paul, Minn., Julian R. Wilheim, Chicago, Ill., Fred L. Woodworth, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for Beltone Electronics.

Eugene M. Warlich, Doherty, Rumble & Butler, St. Paul, Minn., for Radioear Corp.

Elliot S. Kaplan and Deborah Palmer, Robins, Davis & Lyons, Minneapolis, Minn., for Textron, Inc.

John Palmer, Levitt, Palmer, Bowman, Bearmon & Rotman, Minneapolis, Minn., for Dahlberg Electronics Corp.

## MEMORANDUM ORDER

LARSON, Senior District Judge.

In this antitrust action plaintiff Kathleen R. Reiter alleges that the defendants have committed various antitrust violations under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, and section 3 of the Clayton Act, 15 U.S.C. § 14. She seeks treble damages and injunctive relief under Clayton Act §§ 4, 16, 15 U.S.C. §§ 15, 26. In her complaint plaintiff requests certification of a class consisting of all persons in the United States who have purchased hearing aids manufactured by any of the five defendants. All defendants, except Sonotone Corporation which has not appeared in any prior proceeding in this case, move for summary judgment.

In a prior motion defendants challenged plaintiff's standing to sue under section 4. This Court ruled that a party's business or property is injured under the terms of section 4 if he or she has been forced to pay more for a hearing aid than would have been paid if no violation of the antitrust laws had occurred. *See* D.C., 435 F.Supp. 933 (1977). This decision subsequently was upheld by the United States Supreme Court in *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), *r'vsg* 579 F.2d 1077 (8th Cir. 1978). In the present summary judgment motion, defendants claim that this action is barred by the Supreme Court's decision in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, *rehearing denied,* 434 U.S. 881, 98 S.Ct. 243, 54 L.Ed.2d 164 (1977).

In *Illinois Brick* the Supreme Court held that indirect purchasers would not be allowed to prove damages under section 4 of the Clayton Act by establishing that the overcharge of the direct purchaser had been passed on to them. *See* 431 U.S. at 729, 735, 97 S.Ct. at 2066, 2069. With certain exceptions, only the "overcharged direct purchaser, and not others in the chain of manufacture or distribution" may sue for treble damages under section 4. *Id.*

The result reached by the Supreme Court in *Illinois Brick* followed in the wake of a prior case, *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). In *Hanover Shoe* the Supreme Court had held that an antitrust defendant could not assert as a defense to a claim for treble damages under section 4 that the plaintiff, a direct purchaser, had "passed on" the overcharge to a buyer further down in the chain of distribution. *See id.* at 494, 88 S.Ct. at 2232. The Court's reasoning for this holding was twofold. First, the Court was concerned with the complex economic proof that would be required to prove the amount of the overcharge, if any, that was passed on:

"A wide range of factors influence a company's pricing policies. Normally the impact of a single change in the relevant conditions cannot be measured after the fact; indeed a businessman may be unable to state whether, had one fact been different (a single supply less expensive, general economic conditions more buoyant, or the labor market tighter, for example), he would have chosen a different price. Equally difficult to determine, in

the real economic world rather than an economist's hypothetical model, is what effect a change in a company's price will have on its total sales. Finally, costs per unit for a different volume of total sales are hard to estimate. Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued. Since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would normally prove insurmountable." *Id.* at 493, 88 S.Ct. at 2231.

Thus, in the Supreme Court's view, additional long and complicated proceedings involving massive evidence and complicated theories would be required to trace the effects of the overcharge on prices, sales, costs, and profits, as well as to show that these variables would have behaved differently in absence of the overcharge.

The Court's second concern arose out of the first. Because purchasers further down the chain of distribution would have less at stake, they would be less inclined to sue to recover the portion of the overcharge that they had paid. Thus, recognizing the pass-on defense would allow those who violated the antitrust laws by price fixing or monopolizing to retain the fruits of their illegality. *See id.* at 494, 88 S.Ct. at 2232.

In determining that equal application of the pass-on rule to both plaintiffs and defendants was necessary, the *Illinois Brick* Court echoed the concerns it had expressed

almost ten years earlier in *Hanover Shoe.* Furthermore, the Court suggested that if offensive as well as defensive pass on wasn't prohibited, antitrust defendants would face a serious risk of multiple liability. If, for example, an indirect purchaser recovered part of the overcharge by asserting that a part of the overcharge had been passed on to him or her, the direct purchaser could still recover the full amount of the overcharge since the defendant under the *Hanover Shoe* doctrine would not be allowed to assert pass on of the overcharge as a defense. In the Supreme Court's view, different treatment of the pass-on concept would substantially increase the possibility of subjecting a defendant to inconsistent adjudications.[1] *See id.*, 431 U.S. at 730, 97 S.Ct. at 2066. Therefore, unless plaintiff can establish that she is a direct purchaser, she must fall into an exception to *Illinois Brick* or defendants' summary judgment motion must be granted.

In the complaint plaintiff alleges that (1) the defendants and certain unnamed co-conspirators restricted the territories, customers and brands of hearing aids offered by their retail dealers, (2) used the customer lists of their retail dealers for their own purposes, (3) prohibited unauthorized retailers from dealing in or repairing their hearing aids, and (4) conspired among themselves and with their retail dealers to fix the retail prices of the hearing aids. *See* 99 S.Ct. at 2329 n. 1. Plaintiff suggests that the fourth claim, being the only claim for monetary relief, is a retail price maintenance claim and as such does not fall within the scope of the *Illinois Brick* prohibitions. Additionally, plaintiff claims that the availability of injunctive relief under section 16 of the Clayton Act was not affected by the *Illinois Brick* decision and that the remaining claims, therefore, also may stand.[2] Be-

---

[1] This Court, however, finds the reasoning of Mr. Justice Brennan, in his dissent to *Illinois Brick,* to be far more persuasive and believes that the Supreme Court, upon reconsideration, will decide that its fears in allowing offensive use of the pass-on doctrine were both unfounded and unjustified. In light of the disposition

of this case, however, the merits of the *Illinois Brick* decision are not relevant.

[2] Plaintiff's complaint is not a model of clarity in regard to these assertions. In light of plaintiff's contention in her memorandum submitted to this Court on this motion, the United States Supreme Court's recognition that resale price maintenance was a claim, *see* 99 S.Ct. at 2329

cause this Court agrees with plaintiff on both grounds, defendants' motion for summary judgment must be denied.

In *Illinois Brick* the Supreme Court explicitly declined to abandon the *Hanover Shoe* presumption that "the overcharged direct purchaser" is the party injured in its business or property within the meaning of section 4. *See* 431 U.S. at 729, 97 S.Ct. at 2066. Thus, in order for the plaintiff's damage claim to survive this summary judgment motion, plaintiff must be both a direct purchaser and have paid an overcharge.

█ Plaintiff claims that the defendants and their retailers have engaged in resale price maintenance—fixing the price at which retailers may resell hearing aids in the retail market. The chain of distribution is quite simple. The defendant hearing aid manufacturers sell their hearing aids to retailers throughout the United States, who in turn resell the hearing aids to individual purchasers, including the plaintiff. In a competitive market, in which no antitrust violations have occurred or are occurring, the retailers in this distribution chain would be competing among themselves to sell the hearing aids to the public. When the man-

ufacturers and the retailers conspire to fix the prices of the hearing aids, as plaintiff suggests has occurred here, such competition is foreclosed and the market is no longer competitive. Such price fixing activity by manufacturers and retailers is a per se violation of section 1 of the Sherman Act. *See Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1961); *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911).

█ If a conspiracy to maintain resale prices has occurred and prices in the hearing aid industry have in fact been fixed at a level higher than would have occurred absent the illegal restraint, the purchaser has been overcharged. In this Court's opinion, this overcharge is incurred by the purchaser directly, because he or she has purchased the overpriced hearing aid from a member of the price-fixing conspiracy.[3] The manufacturer has not engaged in a practice that charges the retailer an illegally high price, while the retailer, rather than being injured by the price fixing, probably has been a beneficiary of it.[4] *See* L. Sullivan, Antitrust § 134, at 383 (1977). Because the

n. 1, and the Supreme Court's repeated admonition that complaints should be liberally construed in favor of the pleader, *see McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (reaffirming *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), however, this Court henceforth will treat this action as a resale price maintenance action, coupled with claims for injunctive relief. Any other claims that arguably are asserted in the plaintiff's complaint shall be treated as having been waived.

3. An injured plaintiff need not sue all possible defendants under the antitrust laws. *See National Wrestling Alliance v. Myers,* 325 F.2d 768, 775 (8th Cir. 1963) (it is ancient in law that an action under the Sherman Act, although being one premised on a combination or an agreement to restrain interstate trade or commerce may be prosecuted against one or several acting in concert); *Walker Distributing Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1, 8 (9th Cir. 1963), *cert. denied,* 385 U.S. 976, 87 S.Ct. 507, 17 L.Ed.2d 438 (1966), *rehearing denied,* 385 U.S. 1032, 87 S.Ct. 740, 17 L.Ed.2d 680 (1967); *Evanston Motor Co., Inc. v. Mid-Southern Toyota Distributors, Inc.,* 436 F.Supp. 1370

(N.D.Ill.1977); *Washington v. American Pipe & Construction Co.,* 280 F.Supp. 802, 804 (W.D. Wash.1968). The fact that a plaintiff chooses to sue a manufacturer rather than a retailer, when both are involved in an alleged conspiracy, is not relevant to the determination of whether the purchaser is an indirect or direct purchaser.

4. While it is possible that the retailer who agrees to maintain retail prices may suffer a decrease in volume of sales, this is also true when a manufacturer sets its price through horizontal price fixing. In each case, depending on the relative elasticity or inelasticity of the market, sales volume of the guilty party is likely to drop in a competitive market.

However, the Supreme Court has never suggested that the retailer who is subject to horizontal price fixing should not be able to bring suit. Therefore, when a consumer claiming resale price maintenance seeks to sue, the result should be no different. The proof involved will be no simpler nor any more difficult than in the case in which the retailer is suing the manufacturer.

purchaser, including the plaintiff herein and her proposed class, is paying the overcharge directly, no assertion that an overcharge has been passed on to it from another injured party will be necessary to prove the alleged damages.

Several courts have reached the same conclusion. In *In re Cement & Concrete Antitrust Litigation,* 1978–1 Trade Cases (CCH) ¶ 62,069 (D.Ariz. May 12, 1978), the district court refused to grant defendants' motion for summary judgment, which was based on *Illinois Brick,* finding that it was a question of fact whether the defendants had combined and conspired with others from whom the plaintiffs had directly purchased cement. A similar result was reached in *Gas-A-Tron v. American Oil Co.,* 1977–2 Trade Cases (CCH) ¶ 61,789 (D.Ariz. Dec. 7, 1977). In *Gas-A-Tron,* the plaintiffs were sellers of gasoline in the retail market; they sued several manufacturers of gasoline, alleging that the defendants had violated the antitrust laws by fixing the price at which plaintiffs bought gasoline and by conspiring to suppress competition by the plaintiffs in the retail market. *See id.* at 73,244. Plaintiffs had not purchased directly from the manufacturers, but through various intermediaries. The intermediaries were neither named as defendants nor as conspirators. The court, in denying the defendants' summary judgment motion, held that no pass on was involved if the price at which the plaintiffs purchased was the price that was fixed. The court stated:

"Paragraph 15(L) alleges in part that the price was fixed at which independent marketers purchased gasoline in Tucson. In their memorandum opposing defendants' motions, plaintiffs describe *themselves* as the independent marketers intended in the complaint. . . . [T]he paragraph alleges that defendants and their co-conspirators fixed the prices at which the plaintiffs purchased gasoline and that this was done to eliminate competition by plaintiffs in the wholesale and retail markets.

"[If the direct purchasers are co-conspirators], no pass-on theory will be necessary to prove damages. In order to prove liability the proof will have to show that the price at which plaintiffs purchased was the one that was fixed." *Id.* at 73,245 (Emphasis in original).

The New York federal district court, in a pre-*Illinois Brick* decision, also recognized that the purchaser from any member of a price-fixing conspiracy was a direct purchaser. In *Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 481 (S.D.N.Y.1973), the district court anticipated the decision in *Illinois Brick,* holding that under the *Hanover Shoe* doctrine, pass on could not be asserted by an indirect purchaser against an antitrust defendant to prove damages. Nevertheless, the court did not find resale price maintenance actions to fall within the confines of the "no pass-on" doctrine:

"In the absence of an allegation that the alleged price fixing occurred at the point of their purchase, i. e., that the manufacturers were guilty of unlawful vertical price fixing at the retail level, the proposed intervenors have no legally cognizable claim. The bare allegations in the proposed complaint that the retailers passed on the overcharge to consumers do not state a claim upon which relief can be granted. It follows that the proposed intervenors have no standing to intervene in this action." *Id.* at 485.

Other courts have read the "direct purchaser" requirement of *Illinois Brick* even more broadly. For example, in *Florida Power Corp. v. Granlund,* 78 F.R.D. 441 (M.D.Fla.1978), the court held that an allegation of privity between a manufacturer of a product and the middleman would save a suit from dismissal under *Illinois Brick,* when the plaintiff had purchased the product from the middleman and not from the manufacturer. *See id.* at 443–44.

"[Any other] result would be a loophole in the antitrust laws that would provide immunity for any price-fixing manufacturer which, for whatever reasons, finds it useful to conspire to fix prices with its suppliers. This Court cannot believe that the Supreme Court intended such a result without discussing it." *Id.* at 444.

This Court cannot believe so either. Since the retailer is not overcharged, the retailer has suffered no injury in a retail price-fixing scheme. Consequently, were this Court to come to any different conclusion, the laws prohibiting resale price maintenance for all practical purposes would be unenforceable.[5] No conclusion can be reached other than to hold that the prohibitions of *Illinois Brick* do not apply to plaintiff's treble damage claims under section 4 of the Clayton Act.[6]

 This Court also agrees with the plaintiff's contention that injunctive relief, under Clayton Act § 16, 15 U.S.C. § 26, is available both to direct and to indirect purchasers without regard to the *Illinois Brick* decision. The Fifth Circuit Court of Appeals, in *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979), probably put it most succinctly, when it recognized that, unlike a claim for treble damages under section 4, a section 16 request for injunctive relief involved no monetary liability at all, much less a risk of duplicative liability. Furthermore, no determina-

tion of the incidence of an overcharge is required. *See id.* at 1167. On the contrary, plaintiffs need only establish "threatened loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26, to be entitled to relief.

 The Court in *Illinois Brick* recognized that indirect purchasers, although barred from establishing their damages under the rule propounded therein, nevertheless would sometimes suffer injury. *See* 431 U.S. at 746, 97 S.Ct. at 2074. Because the countervailing considerations, *see Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573, 589 (3rd Cir. 1979) (no threat of ruinous or duplicative recoveries or of trial burdened with complex and conjectural economic analyses), confronting the Supreme Court when considering treble damage claims are not present when a plaintiff requests injunctive relief, *Illinois Brick* does not control. Plaintiff's claims for injunctive relief against alleged violations of the antitrust laws by the defendants are proper and may stand.

5. *Cf. Perkins v. Standard Oil Co.,* 395 U.S. 642, 647, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969) (to read "customer" narrowly under the Robinson-Patman Act would allow price discriminators to avoid Robinson-Patman Act sanctions by simple expedient of adding an additional link to the distribution chain); *FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 348–52, 88 S.Ct. 904, 908–10, 19 L.Ed.2d 1222 (1968) (retailer who buys from wholesaler can in some instances be considered customer of original supplier).

Any other conclusion would result in the very thing that the *Hanover Shoe* Court was concerned about—nonenforcement of the antitrust laws and retention of the fruits of their illegality by the violators. A retailer who is a participant in a price-fixing conspiracy is an unlikely candidate to sue for enforcement of the antitrust laws. This is particularly true in a retail price maintenance action, in which the retailer is likely to be as great a beneficiary of the fixed price as is the manufacturer.

6. Even had this Court concluded that the plaintiff was not a direct purchaser, this Court believes that plaintiffs would be entitled to assert pass on of damages under footnote 16 of the *Illinois Brick* decision. The Supreme Court in that case recognized that, in some instances, a party would be entitled to prove that an overcharge had been passed on from the direct purchaser to the indirect purchaser. *See* 431

U.S. 736 and n. 16, 97 S.Ct. 2070. When a manufacturer and a retailer are involved in a conspiracy to fix prices, the market forces governing a free market system are interrupted. Rather than the market determining the equilibrium price, the point at which demand for a product equals supply in a free market system, the manufacturer and retailer's conspiracy is the force that determines pricing in the market. In that instance, the trier of fact need not be concerned with the retailer's profit margins, sales ratios, or pricing decision, since the retailer is a party to the conspiracy. The Supreme Court, itself, recognized that "injury from reduced volume" is not a factor in a suit by a final purchaser of the overpriced goods. *See id.* at 733 n. 13, 97 S.Ct. at 2068. Several other courts have already recognized just such a "co-conspirator" exception. *See, e. g., In re Anthracite Coal Litigation,* 1978–1 Trade Cases (CCH) ¶ 62,059, at 74,587 (M.D.Pa. May 24, 1978) (indirect purchasers may be allowed to assert pass on when middleman was part of the conspiracy that violated the antitrust laws and had aided the alleged violator); *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1163 (5th Cir. 1979) (dicta) (recognizing *Illinois Brick* allowing indirect purchaser to assert pass on when alleged co-conspirator named as party defendant).

In passing on the questions raised in this motion, the Court expresses no opinions on the merits of the claims or the certifiability of a class.

THEREFORE, IT IS ORDERED THAT:

Defendants' motion for summary judgment is denied.