Doug LOWELL, Mackey Nolte, et al., Plaintiffs-Appellants,

v.

AMERICAN CYANAMID COMPANY, a Corporation, Defendant-Appellee.

No. 98-6194.

United States Court of Appeals,

Eleventh Circuit.

June 9, 1999.

Appeal from the United States District Court for the Southern District of Alabama. (No. 97-0581-BH-M), W.B. Hand, Judge.

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI[*], Judge.

EDMONDSON, Circuit Judge:

Plaintiffs, five Alabama farmers, have appealed a district court order dismissing an antitrust complaint

for failure to join middlemen dealers as defendants pursuant to *Illinois Brick Co. v. Illinois,* 431 U.S. 720,

97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). We conclude that *Illinois Brick* has no application in a vertical

conspiracy with no allegations of "pass-on." The district court decision is vacated, and the case is remanded.

*Background*

Between 1989 and 1995, the defendant, American Cyanamid Company ("American Cyanamid"),

maintained two similar rebate programs for its independent retail dealers nationwide. Under the programs,

American Cyanamid entered into written contracts with its dealers whereby American Cyanamid would give

the dealer a rebate on each sale of designated crop-protection products but only if the dealer sold the product

at or above American Cyanamid's suggested resale price; the programs allegedly established a minimum

resale price. Under these contracts, the specified resale price was equal to the wholesale prices paid by the

---

[*]Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

dealer.  American Cyanamid's dealers overwhelmingly responded by selling the product at or above the specified minimum resale price.[1]

In 1997, Plaintiffs filed a complaint, on behalf of themselves and all others similarly situated, alleging American Cyanamid had violated section one of the Sherman Act (15 U.S.C. § 1) and section four of the Clayton Act (15 U.S.C. § 15).  Plaintiffs later amended their complaint, but at no time did they join any of the estimated 2,500 American Cyanamid distributors.  American Cyanamid filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion with prejudice, holding that the independent dealers, as direct purchasers, must be parties to the action under the doctrine of *Illinois Brick.*  Otherwise, Plaintiffs, according to the district court, lacked standing to maintain the suit.  Plaintiffs appealed.

## *Discussion*

We review *de novo* a district court order dismissing a complaint for failure to state a claim, construing the allegations in the complaint as true and in the light most favorable to the plaintiff.  *See Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998).

Plaintiffs' complaint alleges that American Cyanamid engaged in a vertical price-fixing conspiracy with the independent dealers in violation of section one of the Sherman Act and section four of the Clayton Act. Plaintiffs claim that the district court erred in applying *Illinois Brick* to bar this complaint from proceeding directly against American Cyanamid without joining the independent dealers.

*Illinois Brick,* so Plaintiffs' argument goes, does not apply to a vertical price-fixing scheme where (1) a plaintiff buys directly from a dealer who combined with a manufacturer to fix the prices and (2) no allegations are made of "pass-on."  In other words, Plaintiffs claim they are not indirect purchasers at all under *Illinois Brick,* but are direct purchasers from a conspiring party.

---

[1]Although this act may be, by itself, unexceptional (as it is the only way to turn a profit on the individual product), we will assume, due to the procedural posture of this case, that Plaintiffs have shown a vertical price-fixing conspiracy.

American Cyanamid counters that the rule of *Illinois Brick*—that indirect purchasers cannot maintain a suit without joining the appropriate middlemen—is on point and that the present case falls within neither of its two enumerated exceptions.[2] American Cyanamid also points out that the former Fifth Circuit applied *Illinois Brick* to bar claims somewhat similar to this one in *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148 (5th Cir.1979).

We agree with the Plaintiffs. *Illinois Brick* has no application in this case.

*Illinois Brick* was an extension of the Court's earlier prohibition against the *defensive* use of passing on in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 491-94, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).[3] In concluding that the indirect government purchasers of a product may not sue distant manufacturers, *Illinois Brick* cited two underlying rationales. The first of these was that "allowing offensive but not defensive use of pass-on would create a serious risk of multiple liability for defendants. Even though an indirect purchaser had already recovered for all or part of an overcharge passed on to it, the direct purchaser would still recover automatically the full amount of the overcharge that the indirect purchaser had shown to be passed on[.]" *Illinois Brick,* 431 U.S. at 730, 97 S.Ct. 2061. Second, as in *Hanover Shoe,* the Court was worried about the "uncertainties and difficulties in analyzing price and out-put decisions 'in the real economic world rather than an economist's hypothetical model,' and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom." *Id.* at 731-32, 97 S.Ct. 2061 (quoting *Hanover Shoe,* 392 U.S. at 493, 88 S.Ct. 2224) (citations omitted).

Neither of the rationales applies to the very different case of vertical conspiracy with no allegations of passing on:

---

[2]The two exceptions—neither of which apply here—are where there is a preexisting cost-plus contract or where the direct purchaser is owned or controlled by its customer. *See Illinois Brick,* 431 U.S. at 735-36 & n. 16, 97 S.Ct. 2061.

[3]*Hanover Shoe* said that a manufacturer cannot assert a "passing-on" defense (that is, the defense that the plaintiff has no damages when he passed the overcharge on down the production line) against a direct purchaser of its product. 392 U.S. at 494, 88 S.Ct. 2224.

> *Illinois Brick* does not limit suits by consumers against a manufacturer who illegally contracted with its dealers to set the latter's resale price. The consumer plaintiff is a direct purchaser from the dealer who, by hypothesis, has conspired illegally with the manufacturer with respect to the very price paid by the consumer. There is no problem of duplication or apportionment because the consumer is the only party who has paid any overcharge. Although the manufacturer did not sell directly to the consumer, he is a fellow conspirator with the direct-selling dealer and therefore jointly and severally liable with the dealer for the consumer's injury.

2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law 264 (rev. ed.1995) (footnotes omitted).

This case presents no problems of double recovery because only one illegal act (the vertical conspiracy)[4] is present and likely only one set of potential plaintiffs (the farmers) exists.[5] Although Plaintiffs may sue American Cyanamid alone for the full cost of the conspiracy with the dealers, that is the way antitrust conspiracy liability works and does not go to the kind of duplicative recovery with which *Illinois Brick* was concerned.[6]

Second, the economic and legal complexities outlined in *Illinois Brick* are absent here as well. For the plaintiffs in a case like this one, proving what price would have existed in the absence of the unlawful agreement is difficult; but it is no more difficult than the proof necessary in any vertical conspiracy case.

---

[4]Considering the loose nature of notice pleadings, a potential plaintiff might allege only a vertical conspiracy when there is in fact a horizontal conspiracy as well or some other kind of illegal conduct (for example, tying or monopolistic behavior). By so doing, some clever plaintiff could elude a defendant's 12(b)(6) motion but then later recover in the lawsuit for the pass-on injury of a horizontal conspiracy—the kind of injury for which a middleman could also recover. This circumstance could present the *Illinois Brick* double-recovery problem. So, courts must be attentive in holding plaintiffs to their pleadings or, if plaintiffs seek to amend their pleadings to add a kind of conduct from which pass-on could be claimed, in forcing the plaintiffs to join the middlemen as well. *Cf. Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1211 (9th Cir.1984) (holding suit against somewhat distant defendant permissible where plaintiffs changed their theory of recovery to one that does not involve pass-on).

[5]Two other kinds of potential plaintiffs—intermediaries who could sue the manufacturer either (1) for coerced participation in an unlawful scheme or (2) termination for refusing to adhere—may exist given the occurrences alleged in this case. But these kinds of potential plaintiffs do not change the rule about the need to join intermediaries in the case before us now. Such suits would result in a different measure of damages: the damages would not be pass-on and would not factor into Plaintiffs' recovery. In the event that a manufacturer might have to pay two sets of damages, it only means he committed two different injuries; this circumstance is not the double recovery of *Illinois Brick*.

[6]*Illinois Brick* faced the prospect of distant government plaintiffs and intermediate supplier-plaintiffs or dealer-plaintiffs recovering repeatedly from the manufacturers for the same pass-on injury resulting from the same horizontal conspiracy.

Furthermore, the task pales in comparison to the complexities contemplated in *Illinois Brick:*[7] tracing the pass-on through many steps in the production process and determining how much was absorbed, how much was passed on, and by whom; moreover, all of the calculations would have to be made without any of the intermediary parties asserting their interests, but merely with the aid of "elasticity studies introduced by expert witnesses[.]" *Illinois Brick,* 431 U.S. at 742, 97 S.Ct. 2061.

The complexities *Illinois Brick* involved were legal ones as well. "[P]otential plaintiffs at each level in the distribution chain are in a position to assert conflicting claims to a common fund the amount of the alleged overcharge by contending that the entire overcharge was absorbed at that particular level in the chain." *Id.* at 737, 97 S.Ct. 2061. This creates the need for either statutory interpleader under 28 U.S.C. § 1335 or compulsory joinder under Rule 19(a). *See id.* at 738, 97 S.Ct. 2061. And such efforts would create as many problems as they would solve. *See id.* at 738-41, 97 S.Ct. 2061.

But here, we have no such legal complexities. In all likelihood, the full extent of this litigation will be a class-action suit by Plaintiffs against American Cyanamid. That is it. Plaintiffs do not want to join the dealers, and American Cyanamid will have no incentive to bring the dealers in because it cannot seek contribution. *See Texas Industries, Inc., v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding no right of contribution under Clayton and Sherman Acts). Also, suits, if any, by the dealers against American Cyanamid (which seem unlikely)[8] could be handled separately as "the damage criteria are quite distinct and not overlapping for the dealer and the consumer." 7 Phillip E. Areeda, Antitrust Law 183 (1986).

Today's vacation of the district court's decision to dismiss makes no new law. The inapplicability of *Illinois Brick* to vertical conspiracies with no allegations of pass-on (what some have called the "vertical

---

[7]*See In re Mid-Atlantic Toyota Antitrust Litig.,* 516 F.Supp. 1287, 1295 (D.Md.1981) ("While such a calculation [of the price that would have prevailed in a non-pass-on case] would appear to be a simple one, even if it is complex it would not be the type of complexity that the *Illinois Brick* Court was concerned with.").

[8]In this case, no dealers had sued American Cyanamid at the time of the appeal even though the statute of limitations was running out.

conspiracy exception") has long been recognized. *See Shamrock Foods,* 729 F.2d at 1211-13; *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478, 480-82 (7th Cir.1980); *Mid-Atlantic Toyota,* 516 F.Supp. at 1294-96; *Reiter v. Sonotone Corp.,* 486 F.Supp. 115, 119-21 (D.Minn.1980); *Gas-A-Tron v. American Oil Co.,* (D.Ariz.1977); Areeda, *supra,* at 182 ("[O]ther courts have correctly seen that *Illinois Brick* has no bearing on [vertical price fixing.]"); Herbert Hovenkamp, Commentary, *The Indirect-Purchaser Rule and Cost-Plus Sales,* 103 Harv. L.Rev. 1717, 1719 (1990) ("Some courts ... have held that *Illinois Brick* will not bar an indirect-purchaser action if ... the dealer itself participated in the conspiracy.").

And the facts of the cases cited by American Cyanamid are materially different. In *In re Beef,* upon which American Cyanamid relies most heavily, the complaint alleged a horizontal conspiracy between 25 retail food chains. On appeal, the plaintiffs (cattlemen, ranchers and feeders) also said that the district court erred in not allowing them to amend their complaint to allege a vertical conspiracy between the retail chains and the middlemen (meat packers and slaughterhouses).

The district court's refusal to allow amendments—a decision that is reviewed only for abuse of discretion—was upheld on the basis of undue delay on the plaintiffs' part in moving to amend. "Absent any apparent justification for this delay, we cannot hold that the district court abused its discretion." *In re Beef,* 600 F.2d at 1162. We went on to say that the decision not allowing amendments was "supportable" on grounds of futility as well; in that paragraph, we observed that the proposed amendments did not fit the "control" exception to *Illinois Brick.* Then we added another paragraph in which we said that we did not "think" that the allegation of vertical conspiracy in *In re Beef* would get around *Illinois Brick* and its prohibition against double liability.

In context, the discussion of *Illinois Brick* looks like dicta, given that the standard of review was abuse of discretion and that the *In re Beef* court had already decided to affirm the denial of the amendments. But even supposing that the *Illinois Brick* paragraph is binding in materially similar cases, it would have no impact here, because here—unlike *In re Beef*—there is no allegation of both a vertical conspiracy as well as a horizontal conspiracy one step removed from the plaintiffs. Put another way, *In re Beef* is consistent with

the rule we announce today. Not every vertical conspiracy allegation will get around the *Illinois Brick* doctrine. An alleged vertical conspiracy on top of a horizontal conspiracy—like the situation in *In re Beef*—does not, as the plaintiffs in *In re Beef* had hoped, "save" the overall conspiracy claims. Instead, the *Illinois Brick* doctrine might apply even more strongly in a case like *In re Beef.*

*Illinois Brick* is not some formulaic "remoteness" doctrine wherein a plaintiff who proves he purchased from a conspiring party—any conspiring party—automatically escapes the *Illinois Brick* bar. Instead, *Illinois Brick* is a decision based on avoiding risks; and the same risks that were inherent in a garden-variety horizontal conspiracy case with pass-on apply to a case like *In re Beef:* the risks of (1) double liability; and (2) economic and legal complexity. The difference between *In re Beef* and the ordinary horizontal conspiracy is that *In re Beef* takes all the same risks of the typical horizontal conspiracy and compounds them by including another conspiracy (the vertical one) with a separate set of proofs and a separate set of problems.

Second, *Austin v. Blue Cross & Blue Shield,* 903 F.2d 1385 (11th Cir.1990), is not on point either. That case involved non-Blue Cross patients suing Blue Cross for overcharging by hospitals. The plaintiffs did not allege vertical price-fixing between Blue Cross and the hospitals for non-Blue Cross patients; Blue Cross was not even in the plaintiffs' chain of distribution. The plaintiffs only alleged that Blue Cross had a special deal with the hospitals for Blue Cross patients. *Id.* Because of what was, in effect, a lower rate charged to these patients, the hospitals—the plaintiffs alleged—shifted the costs on to their non-Blue Cross patients. *Id.*

The *Austin* opinion set out several explanations for the court's decision that the non-Blue Cross patients lacked standing to maintain the lawsuit. *See id.* at 1393. At least two of those reasons were independent of the others. *See id.* at 1389 (observing that, apart from *Illinois Brick,* "[b]oth causation and antitrust injury[, which were not proved,] are essential elements of antitrust standing."). The *Illinois Brick* reasoning was therefore likely not critical to the decision in the case. Moreover, "[t]here is, of course, an

important difference between the holding in a case and the reasoning that supports that holding." *Crawford-El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1590, 140 L.Ed.2d 759 (1998).

But, even faithfully adhering to the *Illinois Brick* section of the *Austin* opinion, we cannot say that it contradicts today's decision. To the contrary, it too fits within the rule announced today: *Illinois Brick* does not apply to a single vertical conspiracy where the plaintiff has purchased directly from a conspiring party in the chain of distribution. We can accept that *Illinois Brick* prohibited the non-Blue Cross plaintiffs in *Austin* from suing Blue Cross directly when the claims are purely derivative through the hospitals' alleged "cost-shifting." Those facts are not the facts of this case, however: Plaintiffs' claims are not derivative or reliant on cost-shifting theories. The claims are directly against a conspiring party in the chain of distribution.

Moreover, *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599 (7th Cir.1997), and *Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990), do not bear on our decision. First, *In re Brand Name* is distinguishable for the same reasons as *Austin* and *In re Beef.* Second, that the Supreme Court refused to carve out another exception to the *Illinois Brick* doctrine in *UtiliCorp*—a case where the facts seemed ripe for an exception—is unremarkable. Plaintiffs here, unlike in *UtiliCorp,* are not looking for an exception to *Illinois Brick* based on the facts of a particular market; *Illinois Brick* simply does not apply to this kind of conspiracy.

### *Conclusion*

We conclude that *Illinois Brick* is inapplicable to the present case where the complaint alleges a vertical conspiracy with no pass-on. In such a case, Plaintiffs have standing to assert a claim against American Cyanamid directly under the antitrust laws. The district court decision to dismiss the complaint must be vacated. The case is remanded for further proceedings.

VACATED AND REMANDED.