**Hugh COLLINS, et al., Plaintiffs,**

v.

**INTERNATIONAL DAIRY QUEEN,
et al., Defendants.**

**No. 5:94–CV–95–4(WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 7, 2000.

Diane Green Smith, Lisa Ann Dunsky, Chicago, IL, for Hugh Collins, Max Collins, Matt Mullis, Dairy Queen of Powder Springs, Inc., T-Jazier, Inc. and Dairy Queen and Brazier of Eastman, Inc.

Emmet J. Bondurant, II, Atlanta, GA, Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, Quenton R. Wittrock, Minneapolis, MN, for International Dairy Queen, Inc. and American Dairy Queen Corporation.

## ORDER

OWENS, District Judge.

Plaintiffs have moved to file a Sixth Amendment to the complaint for two purposes: First, in accordance with the Court's Order of August 5, 1999, they have amended their complaint to include allegations in Count V that the named plaintiffs and the class members have suffered a net economic loss resulting from defendants' alleged unlawful tying arrangement. The motion to amend is granted with respect to the allegations of net economic loss.

Second, plaintiffs have asserted two additional antitrust damage theories based on factual allegations contained in the Fifth Amended Complaint. The new theories are set forth in Count III and Count IV of the Sixth Amendment to Complaint.

### I. Procedural history

#### A. Amendments

The original complaint was filed April 5, 1994, alleging that defendants violated § 1 of the Sherman Act, 15 U.S.C. § 1, and breached agreements with their franchisees. On April 21, 1994, and August 2, 1994, the complaint was amended to correct errors in the caption. On September 9, 1994, plaintiffs filed a Third Amendment that added an additional claim for breach of the 1974 class action settlement agreement in the Middle District of Tennessee styled *Charles E. Poole v. International Dairy Queen, et al.* In the Fourth Amendment, filed November 15, 1995, plaintiffs added allegations that defendants were monopolizing and/or attempting to monopolize the market for food products and supplies purchased by Dairy Queen franchisees in violation of § 2 of the Sherman Act, 15 U.S.C. § 2, as well as claims for breach of contract, breach of fiduciary duty, and mismanagement of the advertising fund.

Plaintiffs filed a Fifth Amendment on December 7, 1998, in which, in addition to alleging continuing antitrust violations, contractual violations, and violations of Minnesota statutory law, plaintiffs alleged facts for the purpose of demonstrating that defendants and their authorized warehouses have worked in concert to create barriers to entry into the market for food products and supplies purchased by the franchisees.

### B. Defendants' motion for summary judgment based on *Illinois Brick*

On May 15, 1998, defendants filed a motion for summary judgment seeking to dismiss the monopolization and attempted monopolization claims based on the Supreme Court's holding in *Illinois Brick v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), that an indirect purchaser generally lacks standing under § 2 of the Sherman Act. The court granted plaintiffs' motion for extension of time to respond to the summary judgment motion on August 26, 1998, after which plaintiffs sought to conduct additional discovery concerning the applicability in this case of the "control exception" to *Illinois Brick.* On October 9, 1998, plaintiffs filed a motion to file a Fifth Amendment to their complaint to add allegations of defendants' relationship with the authorized warehouses based on plaintiffs' additional discovery, which they contended showed that defendants and some of the authorized warehouses have worked in concert to prevent alternative suppliers from competing in the market for food and supplies purchased by the franchisees. Plaintiffs acknowledge that these allegations were made to attempt to show that the indirect purchaser rule of *Illinois Brick* should not bar their damage claim for monopolization and attempted monopolization based on the "control" exception to that rule.

Plaintiffs conducted additional discovery after the motion to file the Fifth Amendment to the Complaint was filed. On August 4, 1999, the court granted defendants' motion for summary judgment based on *Illinois Brick.* See *Collins v. International Dairy Queen,* 59 F.Supp.2d 1305 (M.D.Ga.1999). We held that facts offered by plaintiffs did not show that defendants controlled the authorized warehouses within the meaning of the "control exception" to the indirect purchaser rule of *Illinois Brick.* Thus, based on their status as indirect purchasers, plaintiffs were precluded from pursuing their monopolization and attempted monopolization claims against defendants.

## C. The present motion

Plaintiffs seek to add, on the basis of their discovery conducted in this case, two new antitrust damage theories involving allegations of a vertical conspiracy between defendants and their authorized warehouses to control the prices charged to the franchisees. They allege that rather than controlling the warehouses defendants have conspired with them, and that such concerted conduct: (1) constitutes a conspiracy to monopolize the market for approved food products and supplies that are purchased by Dairy Queen franchisees, in violation of § 2 of the Sherman Act, and (2) constitutes contracts, combinations or conspiracies in restraint of trade, in violation of § 1 of the Sherman Act.

## II. Discussion

The Federal Rules of Civil Procedure provide that "leave [to amend] shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Unless a substantial reason exists to deny leave to amend, "the discretion of the district court is not broad enough to permit denial." *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1323 (11th Cir.1996) (quoting *Shipner v. Eastern Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir.1989)), *vacated sub nom. Hess v. FDIC,* 519 U.S. 1087, 117 S.Ct. 760, 136 L.Ed.2d 708, *reinstated* 120 F.3d 1140 (11th Cir.1997). The Supreme Court has stated, with respect to the meaning of Rule 15(a) and the reasons justifying denial of a motion to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Hanflik v. Ratchford,* 848 F.Supp. 1539, 1542 (N.D.Ga.1994) citing *Nolin v. Douglas County,* 903 F.2d 1546, 1550 (11th Cir.1990).

## A. Undue delay, bad faith, or dilatory motive

Amendments that are unduly delayed may be denied. However, only undue delay forecloses amendment, which can be appropriate as late as trial or after trial. *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 598 (5th Cir.1981). Defendants have presented a number of cases supporting their argument that the motion to amend should be denied as untimely. *See In re Scientific Control Corp. Sec. Litig.,* 71 F.R.D. 491, 513–14 (S.D.N.Y.1976) (denying amendment where discovery already completed and amendment would be followed by motion for class certification); *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 761 (11th Cir.1995) (amendment disallowed where motion filed eight months after entry of first pretrial order); *Sandcrest Outpatient Servs. v. Cumberland County Hosp. Sys., Inc.,* 853 F.2d 1139, 1148–49 (4th Cir.1988) (proposed amendment did not add newly discovered facts or plead different cause of action); *Madry v. Sorel,* 558 F.2d 303, 306 (5th Cir.1977) (motion to amend filed to avoid statute of limitations bar and to establish federal jurisdiction); *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir.1992) (case had dragged on for over nine years; proposed new seventh amended complaint contained new cause of action unlike those remaining in sixth amendment; emergency motion to amend filed a month before the bench trial was scheduled to start; amendment was apparently futile). Although the present case is almost six years old and has been amended several times, discovery has not yet been completed and a trial date has not yet been set. Thus, the delay in filing the amendment is not undue.

The strongest argument for denying the amendment in this case is defendants' charge that the proposed amendment is a strategic attempt to avoid the adverse summary judgment ruling on the *Illinois Brick* issue. In *Local 472, United Assn. of Journeymen v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982), the local union moved to amend the complaint to drop a defendant and its representatives as parties. The motion to amend was not filed until after discovery was

completed and all defendants had filed motions for summary judgment. The court found that the motion to amend to drop certain parties appeared to be "nothing more than an effort to avoid an adverse summary judgment ruling." *Id.* at 724. In *Jameson v. The Arrow Company*, 75 F.3d 1528 (11th Cir.1996), plaintiff sought to amend the complaint to include a retaliation claim after discovery was already closed, and one month after defendant had filed its motion for summary judgment. The appellate court upheld the refusal to allow the amendment, noting that the basic facts giving rise to the new retaliation theory were available when the previous amended complaint was filed. *Id.* at 1535. In *Ferrell v. Busbee*, 91 F.R.D. 225 (N.D.Ga.1981), the court refused to allow an amendment, finding that plaintiff had to know the relevant facts when the complaint was filed, and that plaintiff was simply attempting to substitute a § 1983 claim for a § 1981 claim after defendants' motion to dismiss pointed out the flaws in such claim. The court further held that such amendment would be futile because it was questionable whether plaintiff had identified any constitutional right as required by § 1983. *Id.* at 232. The above cases cited by defendants contain elements that are not present in the instant case and thus do not require denial of the present motion to amend on the basis of bad faith.

Defendants argue that this case is remarkably similar to *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir.1979), *cert. denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980), in which the Fifth Circuit upheld the trial court's refusal to allow an amendment, noting that:

> [M]uch of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should the theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*In re Beef*, 600 F.2d at 1162, quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir.1967). The complaint in *In re Beef* alleged a horizontal conspiracy with no allegations of pass-on. The decision in *Illinois Brick* was announced during the pendency of the litigation in *In re Beef*. In response to the *Illinois Brick* decision defendants therein filed a motion to dismiss based on the newly announced indirect purchaser rule. The district court granted the motion to dismiss, after which plaintiffs filed a motion to amend the complaint to allege a vertical conspiracy on top of the horizontal conspiracy. The district court denied the motion to amend, and the Eleventh Circuit upheld the denial based not only on the timing of the motion to dismiss, but also on the futility of the amendment, holding that the addition of a vertical conspiracy claim on top of a horizontal conspiracy claim was not sufficient to avoid the *Illinois Brick* ruling. *In re Beef*, 600 F.2d at 1163. The court found, further, that plaintiffs had offered no credible explanation for their failure to move for leave to amend until nearly five months after defendants moved for dismissal on the basis of *Illinois Brick*. *In re Beef*, 600 F.2d at 1162.

In *Lowell v. American Cyanamid Co.*, 177 F.3d 1228 (11th Cir.1999), the Eleventh Circuit held that *Illinois Brick* has no application to allegations of vertical conspiracy with no allegations of pass-on. In *Lowell*, as in the proposed Sixth Amendment, there were only allegations of a vertical conspiracy, rather than a vertical conspiracy on top of a horizontal conspiracy. Thus, plaintiffs' proposed amendment does not appear to be futile, as was the case in *In re Beef*. Nevertheless, in light of *In re Beef*'s disapproval of strategic uses of motions to amend to avoid adverse rulings on summary judgment, the question whether the amendment should be allowed is a close one because of the timing of the motion.

After a thorough consideration of plaintiffs' grounds for amendment and defendants' objections thereto, the court concludes that plaintiffs here, unlike plaintiffs in *In re Beef*, have offered a credible explanation for their failure to move for leave to amend to add the vertical conspiracy allegations until after the *Illinois Brick* motion was decided. Plaintiffs offer the explanation that they took depositions of representatives of defendants' authorized warehouses in an effort to show that

defendants controlled the warehouses, but that the depositions in fact have revealed a conspiracy. The claim that plaintiffs found evidence suggesting the new theories only after additional discovery was conducted is not wholly implausible in view of the complexity of this case, the numerous issues to be resolved, the voluminous discovery that has been rancorous at times, and the necessity of answering several motions for partial summary judgment while discovery was ongoing. Thus, although it would have been better if plaintiffs had amended the complaint to include their new antitrust theories before a decision was rendered on the *Illinois Brick* issue, *In re Beef* does not require a denial of the motion to amend given the circumstances of the present case.

### B. Remaining objections

The court has already indicated, *supra*, that the antitrust theories set forth in Count III and Count IV of the proposed amendment do not appear at this juncture to be futile. As to the issue of prejudice to defendants, plaintiffs claim that allowance of the amendment would result in no prejudice at all. Although some prejudice to defendants may in fact result from the allowance of the amendment, the prejudice would not be undue. The court does not foreclose the consideration of any motions by defendants seeking reasonable and necessary extensions of time for obtaining whatever additional discovery may reasonably and conservatively be required to counter plaintiffs' new theories.

For the reasons stated herein, plaintiffs' motion to file a sixth amendment to the complaint is **GRANTED**.