Fabricant, J.
The plaintiffs in these two consolidated actions, Virginia M. O’Connell and Michael Germano, each allege that the defendant, Microsoft Corporation, engaged in anti-competitive conduct in connection with the marketing of its Windows 98 computer operating system. Both plaintiffs assert claims under the Massachusetts Consumer Protection Act, G.L.c. 93A, §9; O’Connell also asserts a claim under the Massachusetts Antitrust Act, G.L.c. 93, iS.[1] Presently before the Court are Microsoft’s motions to dismiss all counts of both complaints pursuant to Mass.R.Civ.P. 12(b)(6). For reasons that will be explained, the defendant’s motion will be allowed as to O’Connell’s claim under G.L.c. 93, §5. As to both plaintiffs' claims under G.L.c. 93A, §9, the motions will be denied without prejudice to renewal upon the decision of the Supreme Judicial Court in Ciardi v. F. Hoffmann-LaRoche, Ltd., No. 99-3244 (Middlesex Super. Ct. Oct. 20, 2000), which presents the same question of law raised by the present motions.
BACKGROUND
O’Connell’s second amended complaint alleges, in substance, as follows. Microsoft “possess[es] monopoly power ... in the market for operating systems for Intel-based personal computers.” It has created and maintained that monopoly power by various anti-competitive techniques, as detailed in the complaint. In the exercise of its monopoly power, Microsoft has licensed its Windows 98 operating system for such computers “at a monopoly price in excess of what Microsoft would have been able to charge in a competitive market." Computer equipment manufacturers, as well as distributors of CD ROM upgrades, “have treated Microsoft’s monopoly price for Windows 98 as an element of their cost and have passed most, if not all, of Microsoft’s monopoly price on” to their customers.
Users of Windows 98, according to the complaint, are “compelled to accept and agree to an end user license directly from Microsoft, pursuant to the terms dictated by Microsoft,” and to agree “that Windows 98 [is] ‘licensed, not sold.’ ” Such users, the complaint alleges, “incur!] the monopoly price charged by Microsoft for their use of Windows 98,” and thereby suffer damage “in amounts equal to the difference between a competitive price and the monopoly price that they incurred as end user licensees for their use of Windows 98.” Through a series of licensing agreements, the complaint alleges, Microsoft has created “a functional economic unity between Microsoft and [equipment manufacturers] and distributors of upgrade CD ROMs, with respect to Windows 98, such that there is effectively only one transaction between *436 Microsoft and end user licensees of Windows 98, who are themselves in direct privity with Microsoft."
The complaint further alleges that in or about October 1999, O’Connell purchased an Intel-based personal computer on which the manufacturer had pre-installed Windows 98 as the operating system. She “is informed and believes . . . that at least $89.00 of the total purchase price of her computer was attributable to Windows 98. Upon activating her computer, and as a precondition to using Windows 98, plaintiff became an end user licensee of Microsoft as to Windows 98.” She registered her license by electronic mail, providing Microsoft with her electronic mail address and state of residence. She and others similarly situated suffered injury, she alleges, “by paying monopoly prices for Windows 98, ultimately to Microsoft." On this basis, she seeks compensatory damages on behalf of herself and class members “based on the difference between the monopoly prices they paid and the pricé that they would have paid in a competitive market.”
Apparently anticipating one of the issues raised in the present motion, the complaint alleges that “it will be easy for plaintiff and the Class to prove the extent to which the overcharge was passed on to them and, in that aspect of this action, they will not need to resort to economic theory in tracing the effect upon them of Microsoft’s monopoly pricing decisions. Such proof will be detailed and particular, involving principally Microsoft’s series of Windows 98 licensing agreements, culminating in the end user licenses between Microsoft and plaintiff and the class."
Plaintiff Germano’s complaint contains allegations regarding Microsoft’s conduct with respect to Windows that generally parallel the allegations of O’Connell’s complaint, adding additional details about Microsoft’s use of its monopoly power in marketing its web browser, Internet Explorer, as found by Judge Thomas Penfield Jackson in the federal government’s antitrust action against Microsoft. Unlike O’Connell, however, Germano alleges not that he became an end user licensee, but that he “purchased in Massachusetts, for his own use and not for resale, a Windows 95 PC operating system.” On this basis, Germano alleges that he and the members of the class he seeks to represent “were not able to purchase PC operating systems and/or web browsers at prices determined by free and open competition, and were injured in their business and property in that, inter alia, they paid more for Windows and/or the Internet Explorer[2] than they would have paid in a free and open competitive market.” Germano alleges that, pursuant to G.L.c. 93A, §9(3), he and other class members “are entitled to recover double or treble the amount of their actual damages or twenty-five dollars, whichever is greater,” plus attorneys fees and costs.
DISCUSSION
1. Introduction.
Microsoft’s motions to dismiss both actions rest on the bar to claims for pass-through of overcharges established by the United States Supreme Court in the case of Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), and acknowledged by the Supreme Judicial Court in Commonwealth v. Mass. CRINC, 392 Mass. 79, 95, n. 14 (1984). Microsoft argues that the allegations of O’Connell’s complaint establish that she and her purported class are seeking to recover for overcharges passed through to them by direct purchasers of Windows, so that her antitrust claim is barred by the doctrine of Illinois Brick. Microsoft argues further that c. 93A, §9, if it creates a cause of action for anti-corn - petitive conduct at all, incorporates the same doctrine, so that both plaintiffs claims under that statute, based on the facts as alleged, are also barred. O’Connell responds that the end user licensing agreement gives rise to a direct contractual relationship between her and Microsoft, so that the Illinois Brick doctrine does not apply to her antitrust claim. She also invokes various claimed exceptions to that doctrine. Both plaintiffs also argue that c. 93A creates a separate cause of action for monopolistic conduct that harms consumers, without regard to the nature of the relationship between the consumer and the defehdant.
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b), the allegations of fact in the complaint must be treated as true, with all reasonable inferences drawn in favor of the plaintiffs. See General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). Characterizations and conclusions of law, however, warrant no such consideration, and may be disregarded. See e.g. Cheney v. Automatic Sprinkler Corp., 377 Mass. 141, 149 ((1979); Boston & M.R.R. v. County Com’rs of Middlesex County, 239 Mass. 127, 131 (1921). A motion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
2. O’Connell’s Claim under the Massachusetts Antitrust Act, G.L.c. 93, §5.
The Massachusetts Antitrust Act, G.L.c. 93, §§1-14A, prohibits “unreasonable restraints of trade and monopolistic practices in the commonwealth.” G.L.c. 93, § 1. Section 5 provides: “It shall be unlawful for any person or persons to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce in the commonwealth.” Section 12 establishes a private cause of action for “(a]ny person who [is] *437 injured in his business or property by reason of a violation of the provisions of this chapter.”
Section 1 of c. 93 states: “This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable.” Thus, the Massachusetts Antitrust Act expressly incorporates decisions of the federal courts under federal antitrust law. See Monsanto Co. v. Department of Public Utilities, 412 Mass. 25, 27, n.4 (1992) (“Monsanto’s claim under the State antitrust law certainly must fail if Monsanto’s Federal antitrust claim is foreclosed” by exception under federal law); see also Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 95.n. 14 (1984) (injunction warranted under c. 93 where “The harm to consumers in paying the increased prices would appear, as a practical matter, to be incapable of remediation through money damages, given the decision of the Supreme Court in Illinois Brick . . .”); Boos v. Abbott Labs., 925 F.Sup. 49, 51 (1996) {“Illinois Brick would appear to applywith equal force to claims brought under M.G.L.c. 93 as it does to claims under the Clayton Act”).
In Illinois Brick Co. v. Illinois, 431 U.S. at 728, the Supreme Court held that under federal antitrust law, the only party who can establish the injury required to recover damages arising from an overcharge resulting from the exercise of monopoly power is “the overcharged direct purchaser, and not others in the chain of manufacture or distribution.” The direct purchaser, the Court held, is entitled to recover the entire overcharge, regardless of any amount that it may have passed on to its customers, while those to whom the direct purchaser may have passed on some or all of the overcharge have no right to recovery. The rationale for this rule, as explained by the Court, was the need to prevent both “a serious risk of multiple liability for defendants,” and undue complication of litigation from “the uncertainties and difficulties in analyzing price and out-put decisions ‘in the real economic world.’ ” Id. at 732-33.
The Court recognized that “these difficulties and uncertainties will be less substantial in some contexts than in others,” id. at 743, but “rejected]. .. attempts to carve out exceptions ... for particular types of markets.” Id. at 744. The Court also “recognized that direct purchasers sometimes may refrain from bringing a treble-damages suit for fear of disrupting relations with the suppliers,” but nevertheless concluded that the purposes of the antitrust law are “better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it.” Id. at 746. The Court left open the possibility of exceptions only in cases of pre-existing cost-plus contracts, where “the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price,” and “where the direct purchaser is owned or controlled by its customer.” Id. at 736 and n. 16.
Here, on the facts alleged in O’Connell’s complaint, it is apparent that the direct purchasers are the computer equipment manufacturers and the distributors of CD ROM upgrades. They are the ones who paid Microsoft a monopoly price, and then passed on the overcharge, or some portion of it, to their customers, including O’Connell and the members of the class she seeks to represent. Thus, under the rule of Illinois Brick, those direct purchasers are the only parties who have suffered the injury required to state a claim under federal antitrust law. They are entitled to recover the full amount of the overcharge, and their customers, including O’Connell, have no right to recovery. Nor do the narrow exceptions left open in Illinois Brick assist O’Connell; nothing in her complaint suggests either that she made her purchase pursuant to any cost-plus contract between her and the direct purchaser, or that she or other customers of those direct purchasers owned or controlled them.[3]
O’Connell seeks to avoid the Illinois Brick rule by relying on the end user licensing agreement, which she contends gives rise to a direct contractual relationship between the ultimate consumer and Microsoft. See ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1450 (7th Cir. 1996) (“shrink wrap” license governed by contract law). The basis for the Illinois Brick rule, however, is not any question of contractual privity. Rather, as noted supra, the rule rests on the Supreme Court’s evaluation of the practicalities of litigation, in light of the policies underlying the antitrust law. The end user licensing agreement, and whatever contractual relationship it establishes, has no bearing on those practical concerns. See Vacco v. Microsoft Corporation, No. X06-CV00-0160064-S (Conn.Super.Ct. October 10, 2000) (28 Conn. L. Rptr. 353) (rejecting similar effort to avoid Illinois Brick rule based on end user licensing agreement); Siena v. Microsoft Corp., No. 00-1647 (R.I.Super.Ct. Aug. 21, 2000) (same); Daraee v. Microsoft Corp., No. 0004-03311 (Ore.Cir.Ct. June 27, 2000) (same).[4]
O’Connell points out that federal law does not preclude states from providing a cause of action to indirect purchasers under state law. See California v. ARC America Corp., 490 U.S. 93, 103 (1989). The point is correct, but does not assist her; Massachusetts has not enacted such a provision, despite repeated legislative proposals to do so. She argues also that allocation of the overcharge in this case, where only one manufacturer is involved, would be simpler than it would have been in Illinois Brick, which involved multiple manufacturers. That may be so, although her conclusory allegations regarding ease of proof do not so establish, even for purposes of a motion to dismiss, in the absence of factual allegations sufficient to support those conclusions. The Supreme Court’s ruling *438 nevertheless forecloses such a claim, regardless of factors specific to a particular market. See Kansas v. Utilicorp United, Inc., 497 U.S. 199. 208-09 (1990) (rejecting state claims on behalf of utility customers, despite contention that customers pay the entire overcharge through price regulation). Finally, O’Connell asserts that direct purchasers have not asserted claims against Microsoft, and are unlikely do so, so that application of the Illinois Brick rule to suits such as hers may permit Microsoft to avoid liability for damages. Assuming the assertion is correct, it does not avoid the rule, but indicates only that Microsoft may provide an example of the reality that the Supreme Court expressly acknowledged.[5]
O’Connell's claim falls directly within the bar established by Illinois Brick for suits based on overcharges passed on through direct purchasers to their customers. That bar applies to claims under c. 93, §5, through the incorporation of federal rulings under § 1 of c. 93. Accordingly, O’Connell’s claim under c. 93 fails to state a claim upon which relief may be granted, and must be dismissed.
3. Both Plaintiffs’ Claims under G.L.c. 93A, §9.
Microsoft argues that both plaintiffs fail to state a claim under G.L.c. 93A, §9, because that statute does not provide a cause of action for antitrust claims, and even if it did, the Illinois Brick rule would bar the plaintiffs’ claims under that statute, just as it does O’Connell’s claim under c. 93. Judge Botsford of this Court decided precisely the same legal issue in Ciardi v. F. Hoffmann-LaRoche, Ltd., No. 99-3244 (Middlesex Super. Ct. Oct. 20, 2000). Recognizing the novel nature of the issue, Judge Botsford reported that decision to the Appeals Court. This Court has been informed that in January of this year the Supreme Judicial Court granted the parties’ petitions for direct appellate review of that ruling. It thus appears likely that the legal issue raised here will be fully and finally resolved by the highest court of Massachusetts in the near future, perhaps even within this year. Under these circumstances, no practical purpose would be served by this Court’s expenditure of its limited resources to formulate and express a view on the issue in the context of this case. Accordingly, the Court will deny Microsoft’s motions to dismiss as to both plaintiffs’ c. 93A claims without prejudice, leaving Microsoft free to renew the motions after the Supreme Judicial Court’s decision in Ciardi, if that decision so warrants.[6]
ORDER
For the foregoing reasons, it is hereby ORDERED that, in case No. 00-1743, Microsoft Corporation’s Motion to Dismiss Second Amended Complaint is ALLOWED as to Count I, and DENIED without prejudice as to Count II. In case no. 00-2456, Microsoft Corporation’s Motion to Dismiss is DENIED without prejudice.

 Both plaintiffs seek to represent a class of persons similarly situated, and include class action allegations in their complaints.

 As Germano’s complaint alleges elsewhere that Microsoft distributes Internet Explorer “without separate charge,” the apparent import of this allegation is that Microsoft’s conduct inflated the price not of the browser itself, but of the computer equipment with the browser pre-installed.

 The type of control required for application of this possible exception would necessarily involve either corporate affiliation, or operating control “through interlocking directorates, minority stock ownership, loan agreements . . . trust agreements,” or the like. See In re Brand Names Prescription Drugs Antitrust Litig., 123 F.3d 599, 605-06 (7th Cir. 1997).

 As plaintiff points out, decisions of other state courts in cases brought under statutes of other states do not bind this court, and have persuasive value only insofar as the state statutes in issue are comparable to our own. The decisions cited interpret Illinois Brick in reference to arguments identical to those presented here, for purposes of applying state statutes that, like ours, incorporate federal law. Their reasoning is persuasive, and fully applicable here.

 O’Connell’s reliance on Lowell v. American Cyanamld Co., 177 F.3d 1228 (1999), is misplaced. The plaintiffs there alleged that the direct purchasers were participants in a vertical conspiracy. Id. at 1229. No such allegation appears here. Blue Shield of Virginia v. McCready, 457 U.S. 465, 475 (1982), is similarly unhelpful. The plaintiff there did not seek to recover any overcharges passed on to her by an intermediary; rather, she had paid the service provider directly, and sought reimbursement from her health insurer.

 The Court will also leave open for further consideration after the decision in Ciardi Microsoft’s challenge to the sufficiency of Germano’s c. 93A demand letter.