## In re MICROSOFT CORP. ANTITRUST LITIGATION.

Gravity, Inc., et al.,

v.

Microsoft Corp.

No. MDL 1332.

United States District Court, D. Maryland.

Sept. 28, 2001.

---

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Ben Barnow, Barnow and Goldberg, P.C., Joseph P. Danis, Carey and Danis, L.L.C., St. Louis, MO, Robert L. Lieff, Lieff, Cabraser, Heimann, & Bernstein, San Francisco, CA, Christopher Lovell, Lovell & Stewart, New York City, Alice McInerney, Kirby, McInerney & Squire, New York City, Leonard B. Simon, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Douglas G. Thompson, Finkelstein, Thompson & Loughran, for plaintiffs.

Gordon Ball, Law Office of Gordon Ball, Nicholas E. Chimicles, Chimicles & Tikellis, Haverford, PA, John J. Cummings, III, Cummings, Cummings & Dudenhefer, New Orleans, LA, Dianne M. Nast, Roda & Nast, Lancaster, PA, Linda P. Nussbaum, Pomerantz, Haudek, Block, Grossman & Gross, Lynn L. Sarko, Keller & Rohrback, L.L.P., Seattle, WA, Howard J. Sedran, Levin, Fishbein, Sedran & Ber-

man, Philadelphia, PA, David D. Shelby, Shelby & Cartee, Birmingham, AL, Robert A. Skirnick, Meredith, Cohen, Greenfogel & Skirnick, Philadelphia, PA, Executive Committee.

## OPINION

MOTZ, Chief Judge.

Earlier this year, I dismissed counts I and II of the first amended complaint filed by Gravity, Inc., and Mark H. Dickson, against Microsoft Corporation and three original equipment manufacturers ("OEMs"), Compaq Computer Corporation, Dell Computer Corporation, and PB Electronics, Inc. *In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d 728 (D.Md. 2001). These counts asserted class claims on behalf of consumers who had purchased computers from named OEMs on which Microsoft software products had been pre-installed. Plaintiffs now seek leave, pursuant to Federal Rule of Civil Procedure 15, to file a second amended complaint[1]. Although plaintiffs have recast some of their allegations in an attempt to address some of the points upon which my prior opinion turned, they have not cured the fundamental defects in their claims. Accordingly, their motion for leave to amend will be denied on the ground of futility.

## I.

The primary holding in my prior opinion had three parts: (1) plaintiffs' claims under section 1 of the Sherman Act "coalesced" with their claims under section 2 of the Act; (2) plaintiffs were therefore required to allege facts supporting the averment required by section 2 that the OEM defendants specifically intended to perpetuate Microsoft's monopolies; and (3) plaintiffs had failed to allege sufficient facts to meet this pleading requirement. I also noted that although plaintiffs asserted that the OEM defendants were part of a single conspiracy to maintain Microsoft's monopolies, they made no allegation that those defendants made any agreement among themselves, i.e., that the most plaintiffs had alleged was a "rimless" wheel conspiracy which, under the rule of *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1066 (D.Md.1991), was not actionable.

In an attempt to cure these perceived deficiencies, plaintiffs have added counts alleging a series of separate bilateral conspiracies—between Microsoft and Compaq alone and Microsoft and Dell alone—that are said to be in violation of section 1. Compaq and Dell are each alleged to have entered into these conspiracies either because they had the specific intent to maintain Microsoft's monopolies or because they were coerced by Microsoft to do so. Plaintiffs have also added in the second amended complaint tying claims based upon the bundling of Internet Explorer and Windows 95 or Windows 98.[2]

## II.

■ Although plaintiffs now assert section 1 restraint of trade claims that allegedly are separate and distinct from one another and from plaintiffs' section 2 monopolization claims, the changes they have made in the second amended complaint are

---

1. Plaintiffs have dropped PB Electronics as a defendant in the second amended complaint.

2. In addition, in the second amended complaint, plaintiffs allege that the per processor and long term license agreements between Microsoft and the OEM defendants remained in force after the signing of the July 15, 2001 consent decree between Microsoft and the Justice Department. This allegation is made in response to a limitations argument made by the OEM defendants. I do not find it necessary to address that argument or the efficacy of the amended allegation.

only cosmetic. This can be seen by scrutinizing the nature of the damages that plaintiffs assert. Plaintiffs do not claim any damages that might arise directly from any agreement between Microsoft and either Compaq or Dell alleged to be in restraint of trade, such as the cost to consumers who preferred Netscape as their browser and who therefore allegedly overpaid for their Windows licensing agreement since Internet Explorer was bundled with Windows 95 or Windows 98. Rather, plaintiffs assert that they were damaged by having to pay supracompetitive prices for Microsoft's operating software and applications software because defendants, by virtue of their exclusionary conduct, suppressed competition in the operating and software markets and in the middleware market, thereby stifling the development of other products that would have driven prices down.

Plaintiffs' damage theory necessarily assumes, insofar as their section 1 claims are concerned, that Compaq and Dell (either alone or together) had sufficient shares of the consumer market in which they sold their products that, but for the allegedly unlawful agreements into which they entered with Microsoft, competition in the relevant software markets would not have been suppressed and the development of alternative products would not have been stifled. But plaintiffs make no such allegation. Nor could they do so in light of their concessions that the consumer computer market is fiercely competitive and that Microsoft entered into exclusionary agreements with other OEMs that were the same or similar to the ones it made with Compaq and Dell about which they complain. Thus, under the allegations in the second amended complaint there is a lack of any causal nexus between the alleged section 1 conspiracies and the damages plaintiffs seek to recover.

In other words, in the final analysis, according to plaintiffs' allegations, Microsoft was calling the shots on an industry-wide basis. Therefore, Microsoft's agreements with Compaq and Dell alone could not have had the suppressive effects that plaintiffs allege. It may be assumed, as plaintiffs allege, that Microsoft entered into a series of multiple conspiracies for its own purpose of perpetuating its monopolies. If it did so, it violated both section 1 and section 2. However, that fact alone does not convert the aggregation of multiple conspiracies into a single overriding conspiracy, the purpose and effects of which can be attributed to the members of the alleged separate conspiracies other than Microsoft itself. Under black-letter conspiracy law, a conspirator is responsible only for acts undertaken in furtherance of the conspiracy of which he is a member. Here, the damages claimed by plaintiffs cannot be said to have been caused by any single section 1 conspiracy between Microsoft and either Compaq or Dell. They could only have been caused by a wide section 2 conspiracy of which Microsoft and numerous OEMs were members. Thus, the "coalescing" problem remains, and the second amended complaint—which alleges no new facts demonstrating that Compaq and Dell shared Microsoft's monopolistic goals—does not cure it.

### III.

Defendants also renew the argument they made in their motion to dismiss the first amended complaint that plaintiffs' class claims are barred by the indirect purchaser rule of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). I declined to reach that argument in my earlier opinion, and I recognize that I need not do so here. However, I have concluded that the *Illinois Brick* rule does apply and that it is in

the interest of the expeditious resolution of this litigation that I so declare.

Plaintiffs contend that they are not seeking "pass through" overcharges exacted by a monopolist from another innocent party—the type of damages to which *Illinois Brick* applies—but rather damages that all of the defendants directly caused to plaintiffs by raising barriers to competition. Of course, there is no question that plaintiffs are seeking "pass through" overcharges. The very essence of their damage theory is that when they purchased computers from Compaq and Dell, they paid too much for their licenses to Microsoft software because Microsoft was able to sell inferior products at supracompetitive prices by suppressing competition in the relevant software markets.[3] Therefore, it is not the nature of their alleged damages but rather Compaq's and Dell's alleged lack of innocence that is the key to plaintiffs' argument. In effect, they are invoking what has been characterized as the "co-conspirator" exception to *Illinois Brick* recognized by many courts. *See Lowell v. American Cyanamid Co.*, 177 F.3d 1228, 1231 (11th Cir.1999), *State of Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1211–12 (9th Cir.1984), *Abrams v. Interco Inc.*, 1980 WL 1822, *2 (S.D.N.Y. 1980), *Reiter v. Sonotone Corp.*, 486 F.Supp. 115, 119 (D.Minn.1980), *In re Anthracite Coal Antitrust Litig.*, 1978 WL 1341, *3 (M.D.Pa.1978), *Florida Power Corp. v. Granlund*, 78 F.R.D. 441, 443–44

(M.D.Fla.1978), *Gas–A–Tron v. American Oil Co.*, 1977 WL 1519, *2 (D.Ariz.1977); *see also In re Mid–Atlantic Toyota Antitrust Litig.*, 516 F.Supp. 1287, 1295 (D.Md. 1981) (acknowledging that numerous courts have recognized "at least the possibility" of a co-conspiracy exception).

According to plaintiffs, *Illinois Brick* does not apply since the two concerns that gave rise to its holding—the potential for double recovery and the complexities presented by price tracing—are absent.[4] Their first contention is not without force since their joinder of Compaq and Dell does appear to resolve the "double recovery" issue. Plaintiffs themselves could make only one recovery, and Compaq and Dell could assert cross-claims against Microsoft for contribution and indemnity. If they chose not to do so, presumably collateral estoppel would prevent them from doing so in any future action. Several courts have found these considerations regarding double recovery persuasive where the alleged co-conspirators have been joined or could have been joined as defendants. *See, e.g., McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 854–55 (3d Cir. 1996) (noting obligation to fully join defendants in order for co-conspirator exception to apply), *In re Beef Indus. Antitrust Litigation*, 600 F.2d 1148, 1163 (5th Cir.1979) (declining to apply co-conspirator exception, without deciding the merits of the exception, where alleged co-conspirators

**3.** Plaintiffs seek to represent a series of classes who purchased computers sold to class members by Compaq or Dell on which Microsoft operating software or applications software had been installed. If they were not seeking "pass through" damages, there is no reason their proposed classes would be so limited. Instead, presumably they would seek to represent all persons who had allegedly been damaged by the alleged conspirators, whether or not they had purchased their computers from Compaq or Dell.

**4.** Plaintiffs quarrel with the "exception" terminology, contending that the absence of these two concerns in a conspiracy case renders *Illinois Brick* inapplicable *ab initio*, rather than providing a basis for the creation of an exception to its holding. I recognize the logic of plaintiffs' argument but will refer in the text to the "co-conspirator exception" since that is the term that has become conventional in the case law. My conclusion remains the same whatever phraseology is used.

were not named as defendants), *In re Mid–Atlantic Toyota*, 516 F.Supp. at 1294—96 (discussing liability in context of price-fixing case where all alleged conspirators had been named as defendants).

It is less clear that plaintiffs' claims eliminate the complexities of price tracing. *Cf. Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 213, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990) (noting that resolution of the multiple recovery issue still leaves issues of complexity). Microsoft software constituted only a small part of the many components of the computers sold by Compaq and Dell. Plaintiffs' claims assume not only that the prices that Microsoft was charging to the OEMs for licenses to its software were supracompetitive, but also that these overcharges were passed through dollar for dollar to the consumers to whom the OEMs sold their products. The fiercely competitive market in which the OEMs operated would seem to belie that assumption: presumably the market drove down the prices the OEMs could charge and may have caused them to absorb part of the Microsoft overcharges. Self-evidently, analysis of that issue would be complex.

Plaintiffs respond that this analysis is unnecessary since it must be assumed that, as culpable co-conspirators, Compaq and Dell passed through all of the Microsoft overcharges to their customers. Otherwise stated, according to plaintiffs, if Compaq and Dell were forced to absorb a portion of their component costs, the law establishes a presumption that they did so on component parts other than Microsoft products. Thus, according to plaintiffs, all they need prove is the extent of the Microsoft overcharges. But plaintiffs were injured only if they paid too much for the products they purchased, i.e., computers on which Microsoft software had been installed. Therefore, at the least they would have to present some evidence to demonstrate that the OEMs would have sold computers at even lower prices than those enforced by the fiercely competitive market and that the guilty OEMs' profits were greater than the amount of the Microsoft overcharges. This analysis too is self-evidently complex.

■ These complexities aside, I am persuaded that there is a more fundamental fallacy in plaintiffs' position. Their argument would provide a means for circumventing the *Illinois Brick* rule in any vertical conspiracy case in which a plaintiff could meet the relatively low pleading threshold of alleging that a distributor had been coerced into entering into a conspiracy with a powerful manufacturer to maintain the latter's monopoly. To open this door would be inconsistent with the teaching of *Illinois Brick* and its progeny that the *Illinois Brick* rule is intended to have broad force and effect and that departures from it must be narrow in scope. *See UtiliCorp*, 497 U.S. at 216–17, 110 S.Ct. 2807; *see also, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir.1997) (explaining that "Utilicorp implies that the only exceptions to the Illinois Brick doctrine are those stated in Illinois Brick itself . . ."), *Jewish Hosp. Ass'n of Louisville, Ky., Inc. v. Stewart Mech. Enters.*, 628 F.2d 971, 975 (6th Cir.1980) (commenting on the "narrow scope of exemptions to the indirect-purchaser rule"). Although, as I have indicated, many courts have recognized a "co-conspirator exception" to the rule, the vast bulk of these cases have involved price-fixing, where the very purpose of the alleged conspiracy is to pass through an agreed upon overcharge to the indirect purchaser. *See, e.g., Lowell*, 177 F.3d at 1229, *Shamrock Foods*, 729 F.2d at 1210, *Abrams*, 1980 WL 1822 at *1, *In re Anthracite Coal*, 1978 WL 1341 at *1, *Gas–A–Tron*, 1977 WL 1519 at *1; *see also* 2

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 371h (Rev. ed.1995) (discussing price-fixing cases that employ the co-conspirator exception). Here, plaintiffs' theory of conspiracy is far more nebulous and the alleged nexus between the conspirators' alleged wrongful conduct and the harm suffered by the plaintiffs is far more indirect. In my view, *Illinois Brick* therefore bars their claims.

A separate order denying plaintiffs' motion for leave to file a second amended complaint is being entered herewith.